# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVESTRE SOTO,<br><br>        Plaintiff,<br><br>        v.<br><br>CASTLEROCK FARMING AND TRANSPORT, INC, et al.,<br><br>        Defendants. | Case No.: 1:09-cv-00701 - AWI - JLT<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION<br><br>(Docs. 25, 29, 38-39)<br><br>ORDER  GRANTING IN PART AND DENYING IN PART  NON-PARTY J.L. PADILLA & SONS LABOR SERVICE, INC.'S MOTION TO QUASH<br><br>(Doc. 24) |

Previously, Silvestre Soto and Olga Galvan sought an order compelling the production of documents by Castlerock Farming and Transport, Inc. ("Castlerock" or "Defendant").  In addition, non-party J.L. Padilla & Sons Labor Service, Inc. ("Padilla & Sons"), moved to quash a subpoena duces tecum served by Plaintiff.

On July 8, 2011, the Court issued a decision granting Plaintiff's motion to compel the production of documents, and granting in part the motion to quash.  (Doc. 61).  However, by and through this order, the prevision decision is **VACATED**.  For the following reasons, Plaintiff's motion to compel production the production of documents is **GRANTED IN PART AND DENIED IN PART**.  Non-party Padilla & Sons' motion to quash the subpoena is **GRANTED IN PART AND DENIED IN PART**

## FACTUAL AND PROCEDURAL HISTORY

On March 5, 2004, Arnaldo Lara, Mario Laveaga, Mirna Diaz, Paula Leon, and Raul Diaz, individually and acting for the interests of the general public, ("Lara Group") initiated an action in the Kern County Superior Court against Rogelio Casimiro, doing business as Golden Grain Farm Labor. (Doc. 41, Exh. A). The Lara Group added Castlerock as a defendant in that action in the second amended complaint filed September 12, 2005. (Doc. 41, Exh. B).[1] This action was removed to the Eastern District on December 21, 2005.

On November 9, 2005, Plaintiffs' counsel initiated an action against table grape growers based in Kern County, including Castlerock, D.M. Camp & Sons; Marko Zaninovich, Inc.; Sunview Vineyards of California; Guimarra Vineyards Corp.; El Ranch Farms; Stevco, Inc; and FAL Inc.[2] *See Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008). At the time the action was brought, the plaintiffs were unnamed former and current employees of the defendants. *Id.* at 1156. The Court acknowledged the *Doe* matter was related to *Lara*, as well as several other cases imitated against grape growers. *Id.*

Defendants to the *Doe* action, including Castlerock, filed motions to dismiss the operative complaint, which were granted by the Court on March 31, 2008. Likewise, motions to sever the action were granted, and the Court required the plaintiffs to file amended pleadings against each defendant to effectuate the severance. On May 29, 2008, Silvestre Soto and Olga Galvan were named as plaintiffs in the Third Amended Complaint against Castlerock. (*Doe*, Doc. 175). On March 31, 2009, the Court ordered Plaintiffs to re-file their suit in a new case number within twenty days to finalize the severance. (*Doe*, Doc. 239).

---

[1] **Error! Main Document Only.** On June 6, 2011, Plaintiffs requested that the Court take judicial notice of the initial complaint and the second amended complaint filed in *Lara, et al. v. Casimiro, et al.* (Doc. 41). The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989). Therefore, Plaintiff's request for judicial notice is **GRANTED**.

[2] **Error! Main Document Only.** For the same reasons set forth in n.1, the Court may take judicial notice of its own records. Therefore, judicial notice is taken of the Court's docket in *Doe v. D.M. Camp & Sons*, case number 1:05-cv-01417-AWI-SMS.

On April 20, 2009, Silvestre Soto and Olga Galvan filed their complaint against Defendant Castlerock for the following: violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, *et seq*; failure to pay wages; failure to pay reporting time wages; failure to provide rest and meal periods; failure to pay wages of terminated or resigned employees; knowing and intentional failure to comply with itemized employee wage statement provisions; penalties under Labor Code § 2699, *et seq*; breach of contract; and violation of unfair competition law. (Doc. 1). The action was brought "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California." *Id.* at 4.

On July 8, 2011, the Court found Silvestre Soto and Olga Galvan established a prima facie showing of class certification for purposes of discovery because commonality and typicality was demonstrated through the testimony of Soto, Galvan, and class member Javier Garcia. (Doc. 61 at 8-10). Based upon this finding, the Court granted the motion to compel document production. *Id.* at 9. In addition, the Court and granted in part and denied in part non-party Padilla & Sons' motion to quash, finding "the documents sought in the subpoena duces tecum are relevant to Plaintiffs' action against Castlerock because Plaintiffs have established common questions of law and fact to assert the class claims for which they seek discovery." *Id.* at 15.

On November 1, 2011, Plaintiff Olga Galvan voluntarily dismissed the action leaving only Silvestre Soto as a named plaintiff. (Doc. 93). Because the Court's finding there was a prima facie case for class certification was influenced by Ms. Galvan's status as a class representative who asserted "injuries similar to another class member" (Doc. 61 at 9), the Court found it was appropriate to exercise its inherent power to reconsider the motions compelling document production and to quash the deposition subpoena.[3] Accordingly, on December 15, 2011, the Court ordered the parties to file

---

[3] **Error! Main Document Only.** As a general rule, "[a]s long as a district court has jurisdiction over the case, it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (citations omitted). This inherent power is consistent with the Federal Rules of Civil Procedure, which provide: "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

supplemental briefing addressing (1) what effect, if any, Ms. Galvan's changed status from class representative to putative class member had on the motion to compel document production and the motion to quash, and (2) whether, the requested discovery was likely to substantiate the class claims if Silvestre Soto was no longer able to state a prima facie case for class certification.  (Doc. 97).

In accordance with the Court's order, Silvestre Soto ("Plaintiff") filed a supplemental brief on January 18, 2012.  (Doc. 102).  Defendant filed its amended supplemental brief on February 9, 2012 (Doc. 107), and lodged the transcript of Plaintiff with the Court on February 21, 2012.

## SCOPE OF DISCOVERY

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure and Evidence.  In relevant part, Rule 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b).  Relevant evidence is defined as "evidence having any tendency to make the existence of *any fact that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401 (emphasis added).  Further, relevancy to a subject matter is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

## MOTION FOR PRODUCTION OF DOCUMENTS

### I.   Requests for Production of Documents

A propounding party may request documents "in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a).  A request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time, place, and manner for the inspection; and specifies the form or forms in which electronic information can be produced.  Fed. R. Civ. P. 34(b).  Further, a request is sufficiently clear and unambiguous if it "places the party upon 'reasonable notice of what is called for

and what is not.'" *Kidwiler v. Progressive Paloverde Ins. Co.*, 192. F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992)); *see also* Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* (2011) Discovery, para. 11:1886 (test is whether a respondent of average intelligence would know what items to produce).

Upon receipt of a discovery request, a party must respond in writing and is obligated to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its "possession, custody, or control" on the date specified. Fed. R. Civ. P. 34(a). In the alternative, a party may state an objection to a request, including the reasons. Fed. R. Civ. P. 34(b)(2)(A)-(B). When a party resists discovery, he "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 189 F.R.D. 281, 283 (C.D. Cal. 1998) (citing *Nestle Food Corp. v. Aetna Cas. & Co*. 135 F.R.D. 101, 103 (D.N.J. 1990)). If a party fails to respond to a discovery request, the propounding party may file a motion to compel production of documents. Fed. R. Civ. P. 37(a)(3).

**II.     Rule 23 Prerequisites and Discovery**

Generally, a class action requires that joinder of all members of a class be impracticable ("numerosity"), common questions of law or fact to the class ("commonality"), claims or defenses of representatives be typical of the proposed class ("typicality"), and the representative parties "fairly and adequately protect the interests of the class" ("adequacy of representation")  Fed. R. Civ. P. 23(a); Stanton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003).  "These requirements effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (citing *General Telephone Co. v. EEOC*, U.S. 318, 330 (1980)).

When a party seeks discovery related to class discovery, a court may require the plaintiff to make a prima facie showing that the requirements of Rule 23 are satisfied, or that the discovery sought is likely to substantiate the class claims. *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (finding that when seeking discovery "to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of

the class allegations"); *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class allegations"). Together, *Mantolete* and *Doninger* "stand for the proposition that a court does not abuse its discretion if it decides to require a prima facie showing that class treatment is appropriate before allowing discovery on issues pertaining to class certification." *Kaminske v. JP Morgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS. 141514, at *4 (C.D. Cal. May 21, 2010). However, the Ninth Circuit cautioned, "The propriety of a class action cannot be determined in some cases without discovery, as for example, where discovery is necessary to determine the existence of a class or set of subclasses." *Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975). Reviewing *Doninger* and *Kamm*, the Ninth Circuit concluded: "Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 572 F.3d 935, 942 (9th Cir. 2009).

## III.    Discussion and Analysis

Plaintiff alleges Defendant violated California wage and hour laws by requiring off-the-clock work and failing to compensate workers for all hours worked, forcing workers to purchase tools or otherwise supply their own tools, failing to provide daily rest periods and meal periods, failing to provide accurate itemized wage statements, and failing to maintain accurate time-keeping records. (Doc. 1 at 5-6). Accordingly, Plaintiff seeks the following categories of documents:

> 1. <u>Company Policies and Practices</u> – Requests Nos. 9, 10, 12, 13 (policies communicating rest and meal breaks and relieving employees of work duties during these breaks) and 15 (pay rates).
>
> 2. <u>Timekeeping Records</u> – Requests Nos. 3, 4, 5, 6, 7 (timekeeping, time cards, timesheets, start and stop times, time records, reports or summaries of time worked, work schedules), 8 and 11 (scheduling of rest and meal breaks).
>
> 3. <u>Payroll Records</u> – Requests Nos. 1 (payroll records), 2 (itemized wage statements), 16 and 19 (piece rate or bonus payments, including overtime calculations).

(Doc. 39 at 6). Plaintiff asserts he is "entitled to discovery relating to class certification issues," and there is good cause for the discovery sought because "the time and payroll information is not only

relevant but critical to establish numerosity, commonality and typicality for purposes of class certification." *Id.* at 16.[4]

According to Plaintiff, "Defendant has refused to produce information except for records relating to [farm labor contractor] Golden Grain and only for the period of approximately 2003 to 2005, about 20% of the class period." (Doc. 39 at 4). Defendant asserts that the company produced over 18,500 pages of documents though the records produced were "at least six years old and resided only in hard copy," and the production required "many dozens of hours gathering, sorting, and copying" the documents." (Doc. 40 at 5). Defendant argues the records produced "pertain to hundreds of workers" who were employed by Golden Grain, the farm labor contractor which employed Plaintiff. *Id*. at 6.

Defendant asserts Plaintiff's discovery requests cause an undue burden and are extremely intrusive.[5] (Doc. 40 at 8). In addition, Defendant argues Plaintiff failed to establish a prima facie showing of class certification or establish the documents demanded "are likely to substantiate the [] class certification." *Id.* at 8-9.

### A.     Prima facie showing of class certification[6]

Plaintiff contends Ms. Galvan's changed status from class representative to putative class member has no effect upon whether a prima facie showing of class is demonstrated. (Doc. 102 at 3-4). Plaintiff asserts he made a prima facie showing of the Rule 23 claims with declarations "which confirm that Castlerock remains in control of the working conditions no matter which FLC is brought on to assist with supervision and payroll." (Doc. 39 at 3).

---

[4] In addition, Plaintiff argued the payroll and timekeeping records and documents evidencing labor practices were needed "to enforce the State's labor laws through the collection of penalties payable to the State and employees pursuant to the Private Attorneys General Act" ("PAGA"). (Doc. 39 at 2). Recently, the Court determined the PAGA claim had a one-year limitations period, and Plaintiff failed to comply with the notice requirements under PAGA. (Doc. 109). Therefore, the Court granted Defendant's motion for summary adjudication of the PAGA claim. *Id.* at 13. Consequently, the PAGA claim can no longer be a basis for discovery.

[5] This argument was not addressed in the Court's original consideration of the discovery motions, because Defendant failed to offer evidence or support thereto. Having been made aware of the deficiency in the argument, Defendant offers support for this assertion in its supplemental briefing. Because the supplemental briefing was to be limited to the issues identified by the Court, Defendant will not be permitted to bolster its argument at this time. Accordingly, the Court will, once again, not consider Defendant's assertion that the requests are "extremely intrusive."

[6] **Error! Main Document Only.** The Court is not making findings related to class certification, but evaluates the certification factors at this time *only* for a determination of whether prima facie evidence has been shown.

Plaintiff asserts his declaration and that of Javier Garcia establish "Castlerock hires and fires employees, sets and enforces the practices governing wages, schedules and working conditions, and directly and indirectly supervises employees." *Id.* at 3. Plaintiff alleges, "Castlerock remains in control of the working conditions no matter which FLC is brought on to assist with supervision and payroll." *Id.* According to Plaintiff, "the testimony of a class member can support a discovery order," and he has demonstrated a prima facie showing of a certifiable class. (Doc. 102 at 4).

On the other hand, Defendant asserts Plaintiff has not made a prima facie showing of a certifiable class. (Doc. 40 at 12; Doc. 107 at 12-16). Further, Defendant contends Plaintiff is unable to do so because the Complaint does not make a prima facie showing, and lacks factual assertions to support either the claims or class certification:

> Plaintiff's Complaint is devoid of facts and does little more than recite various provisions of wage-and-hour law that baldly assert that Castlerock failed to comply with them. *See generally* Doc. 1. The Complaint does not allege facts showing that Castlerock and all of its FLCs had a policy or practice of committing the same alleged wage-and-hour violations. The Complaint also says nothing concrete about how the plaintiff is similarly situated to all other Castlerock direct employees or the employees of other FLCs.

(Doc. 107 at 13) (*see also* Doc. 40 at 12-13). Defendant asserts the evidence provided by Plaintiff does not make a prima facie showing of a certifiable class, because the declarations are unreliable and contradicted by deposition testimony.[7] *Id.* Specifically, Defendant identifies the following contradictions: "Whether or not Mr. Soto was given picking scissors. Whether or not Mr. Soto and Mr. Garcia were given rest and lunch breaks. Whether forepersons ridiculed Mr. Soto for allegedly complaining about time missing from his paycheck." *Id.* at 13-14.

According to Defendant, "even if the declarations were not intentionally perjurious, they are unreliable and cannot carry plaintiff's burden to show a *prima facie* certifiable class." *Id.* at 14. Also, Defendant contends even if the declarations are credited, "there is still an insufficient showing to carry

---

[7] In addition, Defendant objects to the admission of the declaration of Silvestre Soto as evidence. **Error! Main Document Only.**The Court **OVERRULES** the objection to this declaration for purposes of this motion only. The Court finds the language "under penalty of perjury" was not contained in Mr. Soto's declaration. However, he *does* attest that the declaration is "true and correct" and attests "under the laws of California." This is "substantially" what is required by 28 U.S.C. § 1746.

8

plaintiff's burden" because Plaintiff presents anecdotal evidence from just six of the approximately 330 picking crews who worked at Castlerock during the 11 years from which plaintiff seeks pre-certification discovery." *Id.* at 14.

Rule 23 requires common questions of law or fact and that the asserted claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a). The Ninth Circuit explained, "Although the commonality and typicality requirements of Rule 23(a) tend to merge, each factor serves a discrete purpose. Commonality examines the relationship of facts and legal issues to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168 at 1184 n. 12 (9th Cir. 2007) (citing *Falcon*, 457 U.S. at 157 n.13).

### 1. Commonality

To have the requisite commonality, "[a]ll questions of fact and law need not be common..." *Hanlon, v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "However, it is insufficient to merely allege any common question." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Commonality is demonstrated by a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).[8]

Plaintiff claims Defendant had policies "requiring employees to provide unpaid labor before and after the shift" by attending "school" in the morning before picking grapes and washing trays at home. (Doc. 46 at 7; Soto Depo. at 57:15- 58:6, 145:20-146:25). Plaintiff asserts Defendant required "employees to incur costs relating to the purchase or maintenance of tools and equipment necessary for the job." (Doc. 46 at 7). In addition, Plaintiff alleges Defendant "fail[ed] to provide requisite meal breaks . . . and the require[d] paid rest breaks, and fail[ed] to pay all wages owed upon the termination of the employment relationship." *Id.*

---

[8] **Error! Main Document Only.** Notably, at the time the discovery motions were brought before the Court, and at the time of the hearing, the Supreme Court had not issued its decision in *Wal-Mart*, which clarified the requirements of a finding of commonality under Rule 23(a).

In support of his claims, Plaintiff reported the company "would not give us our rest and lunch breaks correctly (making us work during the ten to thirty minutes) and . . . they did not reimburse me for the scissors that I had to buy in order to do my work." (Soto Decl. ¶ 10; Doc. 38-5 at 4). However, at his deposition, Plaintiff contradicted many of his claims. For example, Plaintiff testified the foreman would yell out to take a break but Plaintiff kept working during the rest and meal breaks "to finish [the] quota." (Soto Depo. at 108:14-109:5). In addition, Plaintiff reported the company provided scissors to the workers, which he and his wife used, although Plaintiff purchased scissors from Defendant one day when he forgot the scissors at home. (*Id.* at 47:19-48:25). Therefore, it does not appear Plaintiff would have standing to assert the claim that Defendant failed to provide rest and meal periods and failed to provide necessary tools to the workers.

On the other hand, Plaintiff's allegation that Defendant required off-the-clock work is supported by evidence from putative class members. Ms. Galvan testified she had "school" before she could start harvesting grapes, and that she was required to wash grape trays at home. (Galvan Depo. at 43:8-16; Doc. 46 at 15). Likewise, Javier Garcia declared that before opening time, he was required "to prepare the equipment and work area" and "to attend a daily meeting they called 'school,'" where they were given work instructions. (Decl. of Garcia ¶¶ 5-6). According to Mr. Garcia, he was required to work after his shift, "such as finishing the job, doing the cleanup of [his] work area, storing items that were used in the harvest, and taking trays . . . to wash at home." *Id.* at 3.

Despite that Plaintiff appears to lack standing to raise several claims, his deposition testimony, as well as the testimony of Ms. Galvan and Mr. Garcia, provides evidence class members were required to work off the clock, either by attending school or taking trays home to wash after work. Therefore, Plaintiff has identified a common fact and legal issue, and the commonality requirement of Rule 23 is satisfied for purposes of this motion.

### 2. Typicality

Under Rule 23(a), "claims are 'typical' if they are reasonably co-extensive with those of absent class members" because the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). To determine typicality, a court should inquire "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to

the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiff and the putative class members report they were required to go to "school" before the official starting time and to take trays home and wash them. Thus, the class representative asserts injuries similar to class members, and the evidence suggests other class members have been similarly injured. Therefore, for purposes of this motion, Plaintiff has made a prima facie showing that his claims are typical to those of other class members.

### 3. Adequacy of Representation

Rule 23(a)(4) requires Plaintiffs to demonstrate that they will "fairly and adequately protect the interests of the class." Representation is "adequate" if the class representatives have claims that are interrelated with interests of the class members. *Falcon*, 457 U.S. at 157-58; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Although Plaintiff appears to lack standing to assert several claims alleged in the complaint, his off-the-clock work claim is interrelated with the interests of putative class members. Therefore, for purposes of this motion, this requirement is satisfied.

### B. Relevance of the discovery requested

As discussed above, Plaintiff has stated a prima facie case for class certification in support of this motion, and is not required to establish that the requested discovery is likely to substantiate his class claims. *See Mantolete*, 767 F.2d at 1424 (9th Cir. 1985) ("the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied *or* that discovery is likely to produce substantiation of the class allegations") (emphasis added). Nevertheless, discovery must be relevant and relate to the claims or defenses the parties may raise. Fed. R. Civ. P. 26(b).

In determining "the appropriate scope of discovery aimed, in whole or in part, at helping the district court determine issues of class certification," this Court has observed that "[t]he mere fact that a lawsuit has been filed is not evidence of Plaintiffs' claims." *United States EEOC v. ABM Indus.*, 2008 U.S. Dist. LEXIS 105649, at * 21 (E.D. Cal. Dec. 22, 2008). In *ABM Indus.*, the plaintiffs presented two declarations in support of their request for discovery, which the Court determined "provide[d] only a modicum of evidence regarding the extent of any Plaintiff's claims," in part due to the "essentially

conclusory . . . nature" of one of the declarations. *Id.* at *22. Further, the Court found the plaintiffs "failed to present persuasive evidence to show that statewide discovery would tend to establish the class allegations or be relevant to their claims." *Id.* at *23-24. Nevertheless, the Court permitted limited discovery related to the plaintiffs' class allegations. *Id.*

In contrast, here, Plaintiff presents his declaration and testimony, as well as the testimony of two potential class members which demonstrate commonality. Timekeeping and payroll records are relevant to Plaintiff's off-the-clock work claims, which are shared by putative class members.[9] For example, documents such as timesheets, time cards, and summaries of time worked may demonstrate whether time spent in "school" was compensated.  Because Plaintiff has stated a prima facie case for class certification, and presented evidence in support thereof, further discovery should be permitted on this claim. *See Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 312 (D. Colo. 1998) ("extended discovery should not be allowed to plaintiffs if they can present no evidence, or if they present insufficient evidence, to warrant a conclusion that extended discovery is reasonably likely to yield support for the class allegations which have been made, particularly if the extended discovery will result in undue prejudice . . .").

On the other hand, Plaintiff is not entitled to discovery for the claims he is unable to pursue on behalf of a class. *See Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) ("[a] named plaintiff cannot represent a class alleging . . . claims that the named plaintiff does not have standing to raise"); *Falcon*, 457 U.S. at 156 ("a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members"). Plaintiff admits Castlerock provided breaks, but he chose to keep working to meet a quota. In addition, although Plaintiff seeks documents to establish unpaid breaks "by demonstrating the wide spread existence of piece rate shifts," he and Ms. Galvan were paid on an hourly basis, with "bonus" of "a few cents per hour." (Soto Depo. at 109:11-

---

[9] One inference from the declaration of Javier Garcia is that because his supervisors, Dario and Raul, worked for Castlerock (at least initially), the requirements they imposed on the workers to work off-the-clock, were policies of Castlerock no matter which FLC was currently supplying the labor. An alternative inference is that the improper policies were those of Dario and Raul without regard for either Castlerock or the FLC. At this point, the Court cannot make this determination. However, because the discovery is pertinent to one of the permissible inferences, the Court finds no basis to preclude it.

23, Decl. of Hanlon, Doc. 49 at 9). Accordingly, Plaintiff is not entitled to discovery related to Castlerock's meal and rest break policies because he lacks standing to pursue these claims.

### C. "Overbroad" discovery requests and an undue burden

Defendant asserts the discovery requests are overbroad because Plaintiff "claim[s] to represent a wage-and-hour class of not just the persons on the plaintiff's crew, and not just persons employed by the same FLC, but instead a class of (i) <u>all</u> of Castlerock's direct employees since 2001 and (ii) <u>all</u> employees of any other FLC who performed work at a Castlerock ranch or facility since 2001." (Doc 40 at 6). Further, Defendant contends that the production Plaintiffs seek would include "hundreds of thousands of pages" because "[d]uring the relevant time period . . . Castlerock had more than 150 direct employees, and did business with more than 120 FLCs. Locating and pulling these documents for production would take Castlerock well more than 100 hours of employee time." *Id.* at 5, 8-9 (citations omitted).

To relieve the burden on a party, a court may order a "sampling" of records. *See, e.g., Smith v. Lowe's Home Ctrs.*, 236 F.R.D. 354, 357-58 (S.D. Oh. 2006) ("limiting discovery to a statistically significant representative sampling. . . will both reasonably minimize the otherwise extraordinary burden imposed"); *Barnhart v. Safeway Stores*, 25 Fed.R.Serv.3d (Callaghan) 35, 1992 U.S. Dist. LEXIS 22572 (E.D. Cal. 1992) (finding "sampling is a reasonable compromise" and ordering the defendant to submit a proposed sampling method to the plaintiff); *Feske v. MHC Thousand Trails Ltd. P'ship*, 2012 U.S. Dist. LEXIS 47236, at *8 (N.D. Cal Apr. 3, 2012) ("in the specific context of class-action discovery, sampling advances the goal of proportionality set forth in Fed. R. Civ. P. 26(b)(3)(C)(iii)") *Cranney v. Carriage Servs.*, 2008 U.S. Dist. LEXIS 113606 (D. Nev. 2008 ) (ordering the parties to identify "ten percent of a relevant combination of workers and work sites," and limiting discovery to those identified"); *Smith v. T-Mobile USA, Inc.*, 13 Wage & Hour Cas.2d (BNA) 633, 2007 U.S. Dist. LEXIS 60729, at *12-13) (C.D. Cal. Aug. 15, 2007) (in the discovery process, plaintiff "sampled" ten percent of the defendant's store managers and corporate employees). As the Court established above, the requested documents are relevant and discoverable by Plaintiffs. Consequently, the Court finds sampling is an appropriate method to relieve the burden imposed upon Defendant given the number of employees and FLCs involved.

1   Defendants argue that the sampling methodology ordered earlier still will require productions of
2   "tens of thousands of pages." (Doc. 107 at 5) Therefore, the Court will order a reduced sample in
3   order to minimize the burden on Defendant but which will still yield meaningful information to
4   Plaintiff.[10] Therefore, Defendant SHALL produce a random sample of 50% of the timekeeping and
5   payroll records for January, April, July and October for the odd-numbered years of the alleged class
6   period and a random sample of 50% of the timekeeping and payroll records for February, May, August
7   and November for the even-numbered years of the alleged class period, unless the parties agree to a
8   different sampling method.

## MOTION TO QUASH

### I.  Legal Standard

Under Federal Rule of Civil Procedure 45, any party may serve a subpoena that commands a non-party "to produce documents, electronically stored information, or tangible things . . . ." Fed. R. Civ. P. 45(a)(1)(C). Subpoenas are subject to the relevance requirements of Rule 26(b), and therefore may command the production of documents which are "nonprivileged [and] . . . relevant to a party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, a party serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). In addition, a non-party subject to a subpoena duces tecum "deserve[s] extra protection from the courts." *High Tech Medical Instrumentation v. New Image Indus.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing *United States v. Columbia Broadcasting System*, 666 F.2d 364, 371-72 (9th Cir. 1982).

Upon motion of the party opposing a subpoena, the court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). The party seeking to quash a subpoena has the "burden of persuasion." *Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005). The court has "ample discretion" to quash or modify a subpoena

---

[10] If the Court certifies a class in this case, Defendants will be required to produce records sufficient to address class liability and for class notice purposes. Clearly, this will result in duplicated effort. Thus, Defendants are free to produce all of the documents at this time.

that causes an undue burden upon the non-party. *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994).

## II.  Discussion and Analysis

Non-party J.L. Padilla & Sons Labor Services, Inc. ("Padilla & Sons") seeks to quash a subpoena *duces tecum* served by Plaintiff, asserting "the requests are not reasonably calculated to lead to the discovery of relevant information in plaintiff's litigation against Castlerock and unduly burden Padilla & Sons." (Doc. 24-1 at 3). Padilla & Sons asserts that the subpoena "is an abuse of the discovery process" because it is "overbroad, contains improper requests, and seeks documents that are not relevant, thus creating an undue burden. . ." (Doc. 37 at 2, 12).

In determining whether a subpoena poses an undue burden, courts "weigh the burden to the subpoenaed party against the value of the information to the serving party." *Travelers Indem. Co.v. Metropolitan Life Insur. Co.*, 288 F.R.D. 111, 113 (D. Conn. 2005); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). Generally, this requires consideration of "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* (quoting *United States v. IBM*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)).

### A.  Relevance, breadth of the document request, and the time period covered

According to Padilla & Sons, the discovery sought is not relevant because the company was not created until 2005, and Padilla & Sons began supplying labor Castlerock after Golden Grain stopped providing this service. (Doc. 37 at 3). In addition, Padilla & Sons states that it does not possess information concerning Plaintiffs' employment with Golden Grain or their work at Castlerock's ranch, because Plaintiff never worked for Padilla & Sons. *Id.* at 7-8. According to Padilla & Sons, Plaintiff "should be permitted to obtain only discovery relating to individuals in whose shoes [he] might reasonably stand under Rule 23," which limits them to the crew members with whom Plaintiffs worked at Castlerock. *Id.* at 10.

Plaintiff has made a prima facie showing of class claims for discovery purposes.[11]  Notably, class member Javier Garcia worked for Castlerock directly and through farm labor contractors Golden Grain and J.L. Padilla & Sons, and asserts Castlerock required off-the-clock work.  As noted above, this evidence has a tendency to demonstrate that the unlawful policy does not belong to any FLC but is a policy of Castlerock, who required each of the FLCs to impose it on its workers.  The time for determining the truth of this allegation has not yet arisen.  Consequently, because the discovery sought could assist in determining whether the class is sufficiently numerous, whether commonality extends to those who worked with other farm labor contractors, and whether Plaintiff is an adequate class representative for the Castlerock workers, the discovery will be allowed.

### B.     Plaintiff's need of the documents

Padilla & Sons assert the Court should require Plaintiffs to exhaust their party discovery options before being allowed to conduct third-party discovery.  (Doc. 37 at 12) (quoting *Heilman v. Lyons*, 2011 U.S. Dist. LEXIS 4430, at *3 (E.D. Cal. Dec. 13, 2010)) ("A motion for issuance of a subpoena duces tecum should be supported by clear identification of the documents sought and a showing that the records are obtainable only through the identified third party.").

In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests.  *See, e.g.*, *Moon*, 232 F.R.D. at 638 (because "plaintiffs have not shown they have attempted to obtain these documents from defendant, the Court finds that, at this time, requiring [the] non-party. . . to produce these documents is an undue burden"); *Instituform Technologies v. Cat. Contracting*, 914 F.Supp. 286, 287 (N.D. Ill. 1996) (holding a party should not be permitted to seek information from a non-party that they can obtain from the opposing party); *Davis v. Ramen*, 2010 U.S. Dist. LEXIS 115432, at *3 (E.D. Cal. May 11, 2010) (denying a request for a subpoena duces tecum because the plaintiff had not demonstrated that the records were only obtainable through the non-party).  Consequently, where plaintiffs have not shown they attempted to

---

[11] As discussed above, Plaintiff lacks standing to represent claims regarding a failure to provide rest and meal periods and failure to provide necessary tools (scissors) on behalf of the class, and as such discovery related to these claims is not relevant.

16

obtain documents from the defendant in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party.

Moreover, when an opposing party and a non-party both possess documents, the documents should be sought from the party to the case. *Nidec Corp. v. Victor Co. of Japan*, 248 F.R.D. 575, 577 (N.D. Cal. 2007). Since the initial filing of this motion, Plaintiff sought a motion compelling the production of documents from Defendant including information about individuals who worked at Castlerock through Padilla & Sons. Defendant refused to produce responsive documents with the exception associated with a different FLC, asserting Plaintiff is unable to state claims on behalf of those who worked for other contractor. However, as discussed above, Plaintiff has stated a *prima facie* case for class certification, and demonstrated he is similarly situated and shares common claims with a Castlerock worker who worked not only for the same FLC as Plaintiff, but also for Padilla & Sons who subjected him to the same unlawful policies. Therefore, Plaintiff has demonstrated the records are relevant to his claims, and established a need to obtain these documents from Padilla & Sons.

### C. Burden of Production

According to Padilla & Sons, responding to the document requests would result in a production of "tens of thousands of pages" because the company "has provided extensive farm labor services to Castlerock." (Doc. 37 at 3-4). Jose Luis Padilla testified the company employed "[a]bout 600-700" individuals who worked at Castlerock. (Depo. of Padilla at 52, Doc. 42, Ex. 1. at 6). Also, Mr. Padilla testified that there were approximately 1,500 employees who worked for Padilla & Sons during the period for which documents are sought. (*Id.* at 10; Depo. of Padilla at 57). All records for these individuals are stored in 40-50 boxes in his house.[12] (*Id.*; Doc. 44 at 13). According to Padilla & Sons, responding to Plaintiff's discovery request "would require dozens of hours of work and preparation." (Doc. 37 at 11).

---

[12] However, it is unclear whether the boxes include records for individuals that would not be relevant to this action, such as those who worked at locations other than Castlerock, in which case Padilla & Sons would be required to sort through the information.

On the other hand, at his deposition, Mr. Padilla testified that the employment documents were maintained in electronic form and he and his bookkeeper had copies of the electronic employment records. Padilla fails to explain why production of these electronic records is overly burdensome or, in fact, why production of the electronic records would pose any real burden at all. Moreover, Padilla & Sons *does not* assert that producing the policies requested in the subpoena duces tecum would be overly burdensome or that they can be obtained from Defendant.

## **CONCLUSION**

Plaintiff asserts the time and payroll records are relevant to class discovery "to establish numerosity, commonality and typicality for purposes of class certification." (Doc. 39 at 16). Specifically, Plaintiff argues the information would establish common factual questions, such as whether Defendant kept track of start and stop times and compensated putative class members for time spent in "school." (Doc. 39 at 16, n. 29). Significantly, district courts have found documents similar to those requested by Plaintiff are pertinent to the issues of class certification, in particular whether the prospective class is sufficiently numerous and whether the plaintiffs and putative class members have claims in common to support this method of litigation. *See, e.g., Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007); *Chavez v. Petrissans*, 2008 U.S. Dist. LEXIS 111596 at *15-16 (E.D. Cal. Sept. 5, 2008).

Further, as recognized by the Ninth Circuit, often pleadings will not resolve an issue of class certification "and some discovery will be warranted." *Vinole*, 572 F.3d at 942. Although Plaintiff has received limited discovery from Defendant, further production will assist in his ability to demonstrate whether class certification is appropriate, and whether Plaintiff is an adequate class representative. For a court to deny discovery that it is necessary to determine the existence of a class is an abuse of discretion. *Kamm*, 509 F.2d at 201.  As articulated by the First Circuit, "To pronounce finally, prior to allowing any discovery, the nonexistence of a class or set of subclasses, when their existence may depend on information wholly within defendant's ken, seems precipitate and contrary to the pragmatic spirit of Rule 23." *Id.* at 210, n.11 (quoting *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972)). Accordingly, this Circuit has held that it is a duty of the court "to give the parties an opportunity to

supply the district court will all of the information that it may find relevant in making a class certification determination." *Chavez*, 2008 U.S. Dist. LEXIS 111596 at *15-16.

When the target of discovery is a non-party, the policy favoring liberal discovery may be tempered to protect a non-party from discovery that is unduly burdensome. *See Dart Industries Co. v. Westwood Chemical Co.*, 349 F.2d 646, 649 (9th Cir. 1980). However, in this case the documents sought in the subpoena duces tecum are relevant to Plaintiff's action against Castlerock because Plaintiff has established common questions of law and fact to assert the class claims for which he seeks discovery. Moreover, there is no evidence that producing the electronic employment records maintained by Padilla & Sons would pose any significant burden.

## ORDER

Based upon the foregoing,

1. Plaintiff's motion to compel discovery is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Within 14 days of the date of service of this order, Defendant **SHALL** produce documents responsive to request number 15; and

    b. Within 30 days of the date of service of this order, as to requests numbers 1, 2, 3, 4, 5, 6, and 7, Defendant **SHALL** produce a random sample of 50% of the timekeeping and payroll records from January, May and September for the odd-numbered years of the alleged class period and a random sample of 50% of the timekeeping and payroll records for March, July, and November for the even-numbered years of the alleged class period unless the parties agree to a different sampling method; and

    c. In all other respects, the motion to compel is **DENIED**.

2. Non-party J.L. Padilla & Sons Labor Service's motion to quash the deposition subpoena is **GRANTED IN PART** and **DENIED IN PART.** Padilla & Sons **SHALL** produce a copy of the electronic record of the employment records maintained by it (and which was described by Luis Padilla at his deposition) for the alleged class period and any responsive documents to the requests made in paragraphs (j), (k), (o), (p), (q),

and (r) of the subpoena duces tecum, whether electronic or in paper format. In all other respects, the motion to quash is **GRANTED**.

IT IS SO ORDERED.

Dated: __April 30, 2012__                             /s/ Jennifer L. Thurston
                                                                  UNITED STATES MAGISTRATE JUDGE