UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVESTRE SOTO and OLGA GALVAN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CASTLEROCK FARMING AND TRANSPORT INC., and DOES 1 to 20 inclusive,<br><br>    Defendant. | CIV-F-09-0701 AWI JLT<br><br>ORDER RE: MOTIONS FOR RECONSIDERATION AND SANCTIONS |

**I. History**

This case arises out of a complex procedural history. Plaintiff seeks to represent a class of farmworkers who have worked for Defendant Castlerock Farming and Transport, Inc. ("Castlerock") in the past. The named plaintiffs were Silvestre Soto ("Soto" or "Plaintiff") and Olga Galvan ("Galvan").[1] Soto alleges that Castlerock failed to abide by a number of California regulations concerning uncompensated "off the clock" work, forced purchasing of tools, meal and rest periods, time-keeping documentation, and wage statements. The origins of this case can arguably be traced back to a suit filed on March 5, 2004, in Superior Court, County of Kern. The complaint in that case did not have Soto as a named plaintiff, but was a class action against Castlerock's farm labor contractor concerning the same subject matter as this case. Doc. 89, Ex. C. The present complaint lists nine causes of action including one under California's Private Attorneys General Act ("PAGA"). Castlerock moved for summary adjudication of this claim,

---

[1]Olga Galvan dismissed her claims and is no longer a party to this case. Doc. 93.

arguing that Soto failed to comply with the administrative requirements of PAGA within the statute of limitation. Doc. 73.  This court granted the motion. Doc. 109.  Meanwhile, Soto made a number of motions to compel with respect to pre-class certification discovery. Docs. 25, 29, 38, and 39.  Magistrate Judge Thurston granted them in part and denied them in part. Doc. 110.  The parties have filed a number of interrelated requests for reconsideration of both orders; additionally, Castlerock seeks sanctions against Soto. Docs. 111, 114, and 116.

## II. Legal Standards

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. There may also be other, highly unusual, circumstances warranting reconsideration." School Dist. No. 1J Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993), citations omitted.

Fed. Rule Civ. Proc. 72(a) allows a party to serve and file objections to a Magistrate Judge's nondispositive order, to be decided by the District Judge.  In the Eastern District of California, this type of objection is treated as a motion for reconsideration by the assigned District Court Judge. See Local Rule 303.  When filing a motion for reconsideration, Local Rule 230(j) requires a party to show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion."  The court reviews a motion to reconsider a Magistrate Judge's ruling under the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C. § 636(b)(1)(A). See also Fed. Rule Civ. Proc. 72(a).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); see also Anderson v. Equifax Info. Services LLC, 2007 WL 2412249, *1 (D. Or. 2007) ("Though Section 636(b)(1)(A) has been interpreted to permit de novo review of the legal findings of a magistrate judge, magistrate judges are given broad discretion on discovery matters and should not be overruled absent a showing of clear abuse of discretion").  Motions to

reconsider are committed to the discretion of the trial court. Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983).

### III. Discussion

**A. Soto's Requests For Reconsideration**

Soto requests reconsideration of two orders, one issued by Judge Thurston and one by the undersigned. In general, Soto seeks reconsideration by making new legal arguments that could and should have been made in the prior motion for summary judgment. The court reviews those requests using the clear error or manifest injustice standard.

**1. April 18, 2012 PAGA Notice**

The prior order explored the interplay between the administrative exhaustion requirement and statute of limitations for PAGA. Plaintiff's motion for reconsideration requires review of that case law. Under PAGA: "A civil action by an aggrieved employee pursuant to subdivision (a) or (f) of Section 2699 alleging a violation of any provision listed in Section 2699.5 shall commence only after the following requirements have been met....The aggrieved employee or representative shall give written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation." Cal. Labor Code §2699.3(a). The complaining employee may only file suit after the LWDA gives notice that it has decided not to investigate or cite the employer for the alleges violations (or if the LWDA does not act within certain time deadlines). Cal. Labor Code § 2699.3(a)(2)(B). Additionally, one year statute of limitations under Cal. Code Civ. Proc §340(a) applies to PAGA. Butterworth v. Am. Eagle Outfitters, 2011 U.S. Dist. LEXIS 119192, *12 (E.D. Cal. Oct. 13, 2011). Thus, a plaintiff must file a PAGA notice with the LWDA within one year of the labor violations complained of. Soto worked for Castlerock in September 2003. The prior order determined that an LWDA notice sent on January 24, 2006 did not satisfy the administrative exhaustion requirement.

Soto asserts that his April 18, 2012 filing with the LWDA and Defendant has cured the problem. Doc. 113, Plaintiff Brief, 4:1-3. Plaintiff analogizes to federal Title VII jurisprudence which similarly requires a plaintiff to formally file a charge with the EEOC and receive a right to sue letter before commencing suit. The Ninth Circuit has found "the subsequent issuance of the 'right to sue' letters cured any jurisdictional defects. Although the case was filed prematurely, the 'right to sue' letters issued before trial. There is no evidence that early filing of the Title VII claim precluded the state from performing its administrative function." Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1351 (9th Cir. 1984). The Wrighten case is factually distinguished. In key part, the plaintiff in that case had filed timely charges with the EEOC; the commencement of the lawsuit before receipt of the right to sue notice was the defect that could be cured. In this case, Plaintiff did not file a timely notice with the LWDA, putting Plaintiff in a completely different position. As there was no timely filing with the LWDA, that agency was denied the opportunity to investigate and resolve the concerns raised. Only if Plaintiff had timely filed a notice with the LWDA and then jumped the gun in filing suit, would the logic of Wrighten apply.

As previously stated, the Northern District has found that filing a late PAGA notice with the LWDA is not sufficient to save the claim. Baas v. Dollar Tree Stores, Inc., 2009 WL 1765759, *5 (N.D. Cal. June 18, 2009) ("Because Plaintiffs did not even serve the required notice until after the statute of limitations had passed, their proposed PAGA claim does not relate back"); Moreno v. Autozone, Inc., 2007 WL 1650942, *4 (N.D. Cal. June 5, 2007) ("The passage of approximately 20 months between the accrual of her Ninth Claim and her first pursuit of administrative remedies is fatal to the claim under the one-year limitations period"). Soto also asserts that PAGA allows for "an absolute right to add a PAGA claim to a preexisting complaint." Doc. 113, Plaintiff Brief, 6:5-7. The prior order clearly rejected this argument as applied in this case. See Moreno v. Autozone, Inc., 2007 WL 1650942, *2 n.2 (N.D. Cal. June 5, 2007); Martinez v. Antique & Salvage Liquidators, Inc., 2011 WL 500029, *9 (N.D. Cal. Feb. 8, 2011).

**2. Equitable Tolling**

Soto now argues that the one year limitations period within which he had to give notice to the LWDA should be equitably tolled. The parties agree that California law on this matter applies. Equitable tolling under California law is "a general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage." Addison v. State, 21 Cal. 3d 313, 318 (Cal. 1978). "Three factors are taken into consideration when deciding whether to apply equitable tolling under California law: (1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." Hatfield v. Halifax PLC, 564 F.3d 1177, 1185 (9th Cir. 2009), citations omitted. Tolling only applies "while the plaintiff reasonably, in good faith, and without prejudice to his adversary pursues an alternative remedy." Nichols v. Canoga Industries, 83 Cal. App. 3d 956, 962 (Cal. App. 2nd Dist. 1978). That is, the flawed "first claim" referenced in Hatfield must be a reasonable alternative remedy in order for equitable tolling to apply to the "second claim."

The state suit was amended to add a PAGA claim in June 2004. Castlerock was substituted in for a Doe defendant in September 2005. Soto did not attempt an LWDA notice until January 24, 2006. Soto argues that tolling should apply from June 2004 since Castlerock was a Doe defendant. No case has determined that an earlier filed PAGA claim can equitably toll a statute of limitations to allow a later LWDA notice to be effective. As stated in the prior order, courts from the Northern District have found that a notice filed after the one year limit can not relate back to a PAGA claim filed within the one year limit. See Moreno v. Autozone, Inc., 2007 WL 1650942, *4 (N.D. Cal. June 5, 2007); Baas v. Dollar Tree Stores, Inc., 2009 WL 1765759, *5 (N.D. Cal. June 18, 2009); Harris v. Vector Marketing Corp., 2010 WL 56179, *3 (N.D. Cal. Jan. 5, 2010). These cases did not explicitly address equitable tolling but did address comparable concerns. Soto cites to an Eastern District case in which the court allowed an employment discrimination suit to proceed even though no EEOC/FEHA claim was filed until after the suit

5

was initiated, noting that "California courts therefore allow plaintiffs to 'cure' a premature suit, with the subsequent receipt of a 'right to sue' letter is not a jurisdictional prerequisite, but merely a condition precedent that is subject to waiver, estoppel, and equitable tolling." Greenly v. Sara Lee Corp., 2006 U.S. Dist. LEXIS 90868, *25 (E.D. Cal. Dec. 15, 2006).  It is not altogether clear from the facts of that case if the newly filed EEOC/FEHA claim was within the one year limitations period.  Regardless, it appears that courts treat PAGA claims differently than FEHA claims in this aspect.  Equitable estoppel does not apply in this circumstance.

Even if the court were inclined to find that equitable estoppel applied, reconsideration must still be denied.  This argument should have been raised in the briefing for the underlying summary judgment motion.  See 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999) ("Raising the argument...in his motion for reconsideration was simply too little, too late").  As for manifest injustice, the situation at hand does not rise to that level.  With respect to decisions ending cases or claims, a serious unfairness must be demonstrated for courts to find manifest injustice.  In one case, the Ninth Circuit found no manifest injustice when it was acknowledged that the party seeking reconsideration of a stay order would have its case heard in a parallel proceeding in Canada.  See Seven Arts Pictures PLC v. Fireworks Entm't Inc., 244 Fed. Appx. 836, *4-5 (9th Cir. Aug. 17, 2007).  The Ninth Circuit did find manifest injustice when the court's own actions constituted a denial of appropriate process, cutting off a litigant's ability to present his/her case.  See Duarte Bardales, 526 F.3d 563, 567-68 (9th Cir. 2008).  In contrast, the First Circuit found that a litigant's misinterpretation of a court's order concerning deadlines, resulting in dismissal, did not rise to that level.  Edward H. Bohlin Co. v. Banning Co., 6 F.3d 350, 357 (1st Cir. 1993).  In this case, Soto still has other avenues of relief that address this substantive labor claims; he is not cut off from meaningful relief.  There is no unfairness that rises to the level of manifest injustice.

**3. Suit Initiated Prior To Implementation of Notice Requirement**

In the underlying summary judgment order, the court found that a plaintiff had to administratively exhaust remedies by filing a notice with the LWDA (and defendant employer)

6

1  within the one year statute of limitations. Doc. 109, Summary Judgment Order, at 10:9-20.  Soto
2  argued that a later filed notice could be related back to an earlier filed complaint that fell within
3  the one year limitations period. See Doc. 88, Summary Judgment Opposition, 10:13-11:22.
4  Soto's argument was rejected.

5      Soto now makes the new argument that since this suit is linked to the state court case
6  which was filed before California law instituted the LWDA notice requirement, administrative
7  exhaustion is not required. Doc. 113, Plaintiff Brief, 6:16-7:18.  PAGA came into effect without
8  the LWDA notice requirement on January 1, 2004. Cal. Labor Code 2699; 2003 Cal. Stats. ch.
9  906.  The state court case was filed on March 2004, was amended in June 2004 to add a PAGA
10 claim, and was amended in September 2005 to name Castlerock as a defendant.  Cal. Labor Code
11 § 2699.3 sets out the LWDA notice requirement and had an effective date of August 11, 2004.
12 See 2004 Cal. Stats. ch. 221.  The procedural posture of this case is admittedly peculiar.

13     Soto has brought up case law that was decided after the briefing of the underlying
14 summary judgment motion was completed and before the order was issued.  This opinion
15 contains a procedural scenario that is similar to the one at hand.  See Thurman v. Bayshore
16 Transit Management, Inc., 203 Cal. App. 4th 1112 (Cal. App. 4th Dist. 2012).  In that case, the
17 suit was filed in January 2004, after PAGA's effective date but before the administrative
18 exhaustion requirement was added.  The California court found that the case could proceed
19 without notice to the LWDA: "The instant action did not commence with the filing of the third
20 amended complaint and the addition of Thurman as a plaintiff; rather, it commenced in January
21 2004 when the union filed the original complaint. Thus, we conclude that this action is not
22 affected by section 2699.3's new administrative exhaustion requirements, because section 2699.3
23 expressly governs the commencement of new actions and not the disposition of pending cases
24 and this action was filed before section 2699.3 was enacted." Thurman v. Bayshore Transit
25 Management, Inc., 203 Cal. App. 4th 1112, 1150 (Cal. App. 4th Dist. 2012).  The opinion
26 reaches that conclusion after a detailed examination of whether the administrative exhaustion
27 requirement was meant to apply retroactively.

28     This is another argument that should have been raised in the underlying briefing on the

1  motion for summary judgment.  As stated above, there does not appear to be manifest injustice as
2  a result of denying reconsideration as Soto has other surviving legal claims that address the
3  substantive labor violations alleged.
4     Further, there is some question as to whether the PAGA claim against Castlerock can be
5  related back to the initial filing of the state suit in March 2004.  When dealing with California
6  statutes of limitation in the context of substituting in Doe defendants, Cal. Civ. Proc. § 474 may
7  apply instead of Fed. Rule Civ. Proc. 15. See <u>Lindley v. General Elec. Co.</u>, 780 F.2d 797, 799-
8  801 (9th Cir. 1986) (personal injury diversity action); <u>Merritt v. County of Los Angeles</u>, 875 F.2d
9  765, 768 (9th cir. 1989) (42 U.S.C. § 1983 action).  Though Castlerock was substituted in place
10 of a Doe defendant in the state court case, Castlerock's demurrer concerning improper
11 substitution was never heard; the motion was lost in the shuffle when the case was removal to
12 federal court, Castlerock was dismissed as a defendant, and a brand new suit naming Castlerock
13 as defendant was filed in 2005.  Whether relation back to the March 2004 filing in state court
14 applies in this circumstance has not been legally tested.
15
16 **4. <u>Brinker</u>**
17    Judge Thurston's order states "Plaintiff admits Castlerock provided breaks, but he chose
18 to keep working to meet a quota. In addition, although Soto seeks documents to establish unpaid
19 breaks 'by demonstrating the wide spread existence of piece rate shifts," he and Ms. Galvan were
20 paid on an hourly basis, with 'bonus' of a 'few cents per hour.' Accordingly, Plaintiff is not
21 entitled to discovery related to Castlerock's meal and rest break policies because he lacks
22 standing to pursue these claims." Doc. 110, Motion to Compel Order, 12:20-13:2.  Subsequent to
23 Judge Thurston's order, the California Supreme Court issued an opinion discussing the rest and
24 meal period regulations in IWC Order 5-2001. <u>Brinker Restaurant Corp. v. Superior Court</u>, 53
25 Cal. 4th 1004 (Cal. 2012).  The court notes that the operative regulatory language at issue in
26 <u>Brinker</u> is different to that of IWC Order 14-2001.  Given the briefing by the parties, they appear
27 to agree that <u>Brinker</u> is relevant and applies in this case.  The court accepts this assertion.
28    In key part, <u>Brinker</u> states:

> Proof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay; employees cannot manipulate the flexibility granted them by employers to use their breaks as they see fit to generate such liability. On the other hand, an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks. The wage orders and governing statute do not countenance an employer's exerting coercion against the taking of, creating incentives to forgo, or otherwise encouraging the skipping of legally protected breaks.
>
> To summarize: An employer's duty with respect to meal breaks under both section 512, subdivision (a) and Wage Order No. 5 is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. What will suffice may vary from industry to industry, and we cannot in the context of this class certification proceeding delineate the full range of approaches that in each instance might be sufficient to satisfy the law.
>
> On the other hand, the employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay under Wage Order No. 5, subdivision 11(B) and Labor Code section 226.7, subdivision (b).

Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1040-41 (Cal. 2012), citations omitted. Soto argues that, in light of that language, he can pursue rest and meal period claims as he "was directly and indirectly discouraged from taking his 30 minute meal breaks. Specifically, Castelrock discouraged Soto and class members from taking their meal and rest breaks by enforcing a quota system in which workers were forced to produce a certain number of boxes per day or risk being dismissed for the day without pay or dismissed permanently." Doc. 116, Plaintiff Opposition, 10:3-10. Castlerock opposes the request for reconsideration on procedural grounds and substantively for the reason that "Plaintiff's scant evidence regarding whether Castlerock's employees were discouraged from taking their rest and meal breaks is contradictory, which precludes him from making the requisite prima facie showing for company-wide pre-certification discovery." Doc. 118, Castlerock Opposition, 5:13-16.

Soto's theory of meal and rest period violation is narrow. First, Judge Thurston determined that Soto was not paid on a piece rate basis. To the extent Soto asserts that payment on a piece rate basis de facto violates the rest and meal period requirements, he is not the proper party to raise such a claim. Second, Soto appears to be only arguing that the violation was based

on practice that contradicted official policy.  That is, Soto does not allege that meal and rest periods were not scheduled.  Rather, he is asserting that notwithstanding the formal policy, informal pressure was applied to workers to skip the breaks.  Soto admits that "the foreman would yell out to take a break but [Soto] kept working through the meal and rest breaks 'to finish the quota.'" Doc. 116, Plaintiff Opposition, 9:9-10.  Such allegations, properly substantiated, may constitute a violation of the rest and meal period regulations.

As Brinker alluded to, "an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks. The wage orders and governing statute do not countenance an employer's exerting coercion against the taking of, creating incentives to forgo, or otherwise encouraging the skipping of legally protected breaks." Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1040 (Cal. 2012).  This conclusion follows other cases in which employer pressure to skip breaks has been found to potentially constitute a violation of the regulations. See Cicairos v. Summit Logistics, Inc., 133 Cal. App. 4th 949, 961 (Call. App. 3rd Dist 2005) (reversing grant of summary judgment to defendant on the basis that defendant "did not schedule meal periods, include an activity code for them, or monitor compliance. As a result, 'most drivers ate their meals while driving or else skipped a meal nearly every working day.' Furthermore, the defendant's management pressured drivers to make more than one daily trip, making drivers feel that they should not stop for lunch").  Such violations may be the basis of granting class certification. See Jaimez v. Daiohs USA, Inc., 181 Cal. App. 4th 1286, 1304 (Cal. App. 2d Dist. 2010) (reversing denial of class certification, taking note that "RSR's often were not able to take their required rest breaks; The delivery schedules made it extremely difficult for RSR's to timely complete the deliveries and take all required rest breaks; After First Choice  reclassified the RSR's as hourly employees, RSR's were told to complete their deliveries within eight hours, making it even more difficult for RSR's to take all required rest breaks"); Ortega v. J.B. Hunt Transp., Inc., 2012 U.S. Dist. LEXIS 183638, *6 (C.D. Cal. 2012) ("certified the class as to Plaintiffs' meal and rest period claims because those claims involve the application of a uniform policy and allegations that the uniform policy (or uniform lack of policy) violates operative law").

Regarding whether discovery should be provided in this case, the Southern District observed, "to the extent that these policies [frustrating enjoyment of the break] were informal and enforced through 'ridicule' or 'reprimand,' they should be provable through common representative testimony." Dilts v. Penske Logistics, LLC, 267 F.R.D. 625, 638 (S.D. Cal. 2010). Soto admits that the farm labor contractor and Castlerock facially conformed with legal requirements by announcing the breaks in the work fields; he does not explain how records would show that he was pressured to work through breaks. To substantiate his claims, Soto needs to provide the testimony of other workers, not time records. No additional discovery from Castlerock is necessary. There is no assertion by any party that Castlerock paid any workers for missing rest or meal periods; Castlerock states that the records "identify when he started and ended his shift, and the total number of hours he worked. They do not identify whether he took the breaks that were provided him." Doc. 118, Castlerock Opposition, 7:16-18. Thus, the time records would not help to prove or disprove any labor law violation. Soto has not shown why such records are needed.

**B. Castlerock's Requests For Reconsideration**

Castlerock seeks reconsideration of Judge Thurston's order granting limited discovery on a number of bases.

**1. Galvan Declaration**

Castlerock also argues "the Order erroneously relies upon the incomplete testimony of former named plaintiff Olga Galvan to establish a basis for the ordered discovery, despite the fact that Ms. Galvan refused to appear to complete her deposition, rendering her testimony wholly unreliable." Doc. 114, Castlerock Brief, 5:27-6:2. Castlerock points to Fed. Rule Civ. Proc. 37, which states for a "party's failure to attend its own deposition," the court may "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. Rule Civ. Proc. 37(d) and 37(b)(2)(A)(ii). Castlerock interprets the rule to be that "her incomplete testimony is not credible and has no

evidentiary value." Doc. 114, Castlerock Brief, 10:12-13.  While Fed. Rule Civ. Proc. 37 does permit discounting an individual's statements for failure to take part in a deposition, it does not require such a sanction.

In this case, Judge Thurston decided not to sanction Galvan's conduct in that way.  Judge Thurston signed a stipulated order compelling Galvan's attendance at a deposition; Galvan was specifically warned that dismissal under Fed. Rule Civ. Proc. 37(b)(2)(A) was possible if she refused to be deposed. Doc. 83, 2:1-3.  Such a warning is consistent with the practice in other courts. See Paige v. Consumer Programs, Inc., 248 F.R.D. 272, 278 (C.D. Cal. 2008).  Galvan did not show up at her deposition, which lead to her stipulated dismissal from this case. Doc. 93, Stipulated Dismissal Order.  Judge Thurston decided that dismissal was appropriate in this circumstance.  Indeed, dismissal is generally considered the most drastic of sanctions. See Adriana Intern. Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990); see also U.S. v. $2,164,341 in U.S. Currency, 2013 WL 321768, *3 (D. Ariz. 2013) (entry of default more serious than excluding testimony).

**2. Scope of Discovery**

Castlerock seeks reconsideration of Judge Thurston's discovery order granting Soto's request for discovery: "Based on her ruling that plaintiff provided prima facie evidence of a narrow, potentially certifiable class (i.e., workers not compensated for attending 'school' or cleaning trays before or after a shift), the Magistrate Judge ruled that plaintiff is entitled to the demanded discovery (i.e., daily timesheets for thousands of workers, as well as related records)....The essence of plaintiff's claim is that workers were required to work 'off the clock.' In other words, their time records did not record time allegedly spent before and after the official work day. Thus, time records cannot possibly support a claim that work was not recorded." Doc. 114, Castlerock Brief, 4:6-21.  In granting discovery, Judge Thurston reasoned that "Timekeeping and payroll records are relevant to Plaintiff's off-the-clock work claims, which are shared by putative class members. For example, documents such as timesheets, time cards, and summaries of time worked may demonstrate whether time spent in 'school' was compensated."

Doc. 110, Motion to Compel Order, 12:6-9.  Soto further explains that "The documents available for one of several FLCs show the recorded start and stop of shifts and are critical to show a policy of not recording all hours worked for purposes of pre-shift and post-shift claims." Doc. 116, Plaintiff Opposition, 6:14-17.  Judge Thurston's reasoning is sound.  The records are needed to confirm that time spent working (including "school" and cleaning trays) was not recorded and/or paid.  An individual can provide information about when the "school" and cleaning tray activities took place.  Putting the time records together with that information may reveal whether the individual was paid for those activities; both pieces of information are needed to establish a violation.  This would help show a pattern of payment or non-payment, relevant to class certification.  In the circumstances of this case at this stage, these time records are relevant.

**3. Sufficiency of Evidence**

Castlerock argues that Soto has not brought sufficient evidence to support discovery of pay records pertinent to "school" and cleaning of trays.  Soto presents his own deposition as well as the deposition of Garcia and the declaration of Galvan.  Castlerock argues that the situation in this case is similar to that in E.E.O.C. v. ABM Industries, Inc., 2008 WL 5385618; 2008 US Dist LEXIS 105649 (E.D. Cal. 2008).  However, Judge Thurston specifically examined that case and found it inapplicable as plaintiffs there were relying on conclusory declarations. Doc. 110, Motion to Compel Order, 11:26-12:1.  Judge Thurston granted discovery based upon more detailed deposition testimony.

There are further distinguishing factors in the cases Castlerock cites.  In ABM, the plaintiffs sought records of all sexual harassment complaints within defendant's California operations based on specific allegations of one supervisor's harassing actions and general allegations of a hostile environment/quid pro quo harassment. E.E.O.C. v. ABM Industries, Inc., 2008 US Dist LEXIS 105649, *14-20 (E.D. Cal. 2008).  Plaintiffs' theory in ABM seems to have been that defendant's sexual harassment policy was insufficient as applied; "The fact that a company has a national policy is relevant to the analysis. However, the EEOC and the intervening Plaintiffs have failed to show how the national policy evidences a pattern or practice

in this case." E.E.O.C. v. ABM Industries, Inc., 2008 US Dist LEXIS 105649, *22 (E.D. Cal. 2008). There was insufficient evidence to make the analytical step that connects a policy as the cause of the violation. In this case, Soto alleges that Castlerock has a practice that extends across all the farm labor contractors. Doc. 116, Plaintiff Opposition, 8:9-13. Unlike in ABM, such a practice (not paying wages for "school" or cleaning trays) would directly show violation of labor laws on its face. In this case, Castlerock admits that its records do not affirmatively show that workers were specifically paid for "school," Doc. 114, Castlerock Brief, 8:9-11. Judge Thurston found that it was possible that Castlerock had a policy that resulted in non-payment for that time. Doc. 110, Motion to Compel Order, 12:26-28. This is in contrast with another case Castlerock raises in which the official policy was in compliance with applicable laws. Tracy v. Dean Witter Reynolds, Inc., 185 F.R.D. 303, 308 (D. Colo. 1998) ("nothing facially unlawful about such a practice").

### C. Sanctions

Castlerock seeks sanctions against Soto for the filing of this reconsideration motion as "It seeks reconsideration without basis and misrepresents simple procedural history." Doc. 117, Castlerock Opposition, 16:23-24. While the motion for reconsideration will not be granted, it is not so frivolous as to warrant sanctions. The motions seek reconsideration based on clear error and manifest injustice. While Soto should have brought these arguments in the underlying summary judgment motion, the law is new and there is little case authority to guide the way. The court finds any missteps to be excusable.

### IV. Order

All motions for reconsideration and sanctions are DENIED.

IT IS SO ORDERED.

Dated:     March 22, 2013                                    /s/ Anthony W. Ishii
                                                            SENIOR DISTRICT JUDGE