1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  SILVESTRE SOTO, on behalf of himself          )  Case No.: 1:09-cv-00701 - AWI - JLT
    and all other similarly situated individuals, )
12                                                 )  FINDINGS AND RECOMMENDATIONS
                       Plaintiff,                  )  DENYING PLAINTIFF'S MOTION FOR CLASS
13          v.                                     )  CERTIFICATION AND APPOINTMENT OF
                                                   )  CLASS COUNSEL
14  CASTLEROCK FARMING AND                         )
    TRANSPORT, INC.,                               )
15                                                 )  (Doc. 146)
                       Defendant.                  )
16  ─────────────────────────────────────         )

17          Plaintiff Silvestre Soto seeks class certification pursuant to Rule 23 of the Federal Rules of Civil

18  Procedure.  (Doc. 146).  On October 28, 2013, Defendant Castlerock Farming and Transport, Inc.

19  ("Castlerock" or "Defendant") filed its opposition to the motion (Docs. 150-152), to which Plaintiff

20  filed a reply on November 18, 2013 (Doc. 155).

21          The Court has read and considered the pleadings and supporting documents, and heard oral

22  arguments by counsel on December 18, 2013.  For the reasons set forth below, the Court recommends

23  Plaintiffs' motion for class certification be **DENIED**.

24  I.      **PROCEDURAL HISTORY**

25          On March 5, 2004, Arnaldo Lara, Mario Laveaga, Mirna Diaz, Paula Leon, and Raul Diaz,

26  individually and acting for the interests of the general public, ("Lara Group") initiated an action in the

27  Kern County Superior Court against Rogelio Casimiro, doing business as Golden Grain Farm Labor.

28  (Doc. 41, Exh. A.) The Lara Group added Castlerock as a defendant in their second amended complaint

1

filed September 12, 2005.  (Doc. 41, Exh. B.)[1]  This action was removed to the Eastern District on December 21, 2005.

On November 9, 2005, Plaintiff's counsel initiated an action against table grape growers and vineyard operators based in Kern County including: D.M. Camp & Sons; Marko Zaninovich, Inc.; Sunview Vineyards of California; and Giumarra Vineyards Corp.[2]  (*See Doe v. D.M. Camp & Sons*, Case No. 1:05-cv-01417-AWI-SMS, Doc. 1 at 1.)  The Doe plaintiffs were unnamed former and current employees of the defendants.  *Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153, 1156 (E.D. Cal. 2008).  On December 6, 2005, the Doe plaintiffs filed their First Amended Complaint, identifying Castlerock Farming and Transport, Inc.; El Rancho Farms; Stevco, Inc.; and FAL, Inc., doing business as Lucich Farms; as additional defendants in the action.   (*See Doe,* Case No. 1:05-cv-01417-AWI-SMS, Doc. 9 at 1.)  The Court acknowledged the *Doe* matter was related to *Lara*, as well as several other cases.  *Doe*, 624 at 1156.

Defendants to the *Doe* action, including Castlerock, filed motions to dismiss the operative complaint, which were granted by the Court on March 31, 2008.  Likewise, the defendants' motions to sever the action were granted, and the Court required the plaintiffs to file amended pleadings against each defendant to effectuate the severance.  On May 29, 2008, Silvestre Soto and Olga Galvan were named as plaintiffs in the Third Amended Complaint against Castlerock. (*Doe*, Doc. 175.)  On March 31, 2009, the Court ordered the plaintiffs to re-file their suit within twenty days to complete severance. (*Doe*, Doc. 239.)

On April 20, 2009, Silvestre Soto and Olga Galvan filed their complaint against Castlerock for the following: violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, *et seq*; failure to pay wages; failure to pay reporting time wages; failure to provide rest and meal periods; failure to pay

---

[1]  The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989).  Therefore, the Court takes judicial notice of the initial complaint and the second amended complaint filed in *Lara, et al. v. Casimiro, et al*.

[2]  For the same reasons set forth in n.1, the Court may take judicial notice of its own records.  Therefore, judicial notice is taken of the Court's docket in *Doe v. D.M. Camp & Sons*, case number 1:05-cv-01417-AWI-SMS.

1   wages of terminated or resigned employees; knowing and intentional failure to comply with itemized

2   employee wage statement provisions; penalties under Labor Code § 2699, *et seq*; breach of contract;

3   and violation of unfair competition law.  (Doc. 1.)  Plaintiffs brought the action on behalf of "all non-

4   exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by

5   each of the Defendants within the State of California."  (*Id.* at 4.)

6        On July 7, 2011, the plaintiffs filed a motion to amend the complaint, seeking to add Javier

7   Garcia as a named plaintiff and potential class representative.  (Doc. 54.)  The Court noted the

8   plaintiffs had filed five pleadings since the initiation of the case in 2005, either by stipulation or

9   pursuant to the Court's order.  In addition, the Court observed Defendant first raised its argument that

10  the plaintiffs were not adequate class representatives in its Answer, and the plaintiffs knew "Defendant

11  argued against their ability to act as class representatives for two years," or since 2009.  (Doc. 71 at 6.)

12  Further, the Court determined Defendant would suffer undue prejudice if Javier Garcia were added as

13  a class representative, because Defendant would have to conduct further discovery "to ascertain

14  whether Mr. Garcia was subject to unique defenses, which goes to the typicality requirement of Rule

15  23."  (*Id.* at 9.)  Accordingly, the Court denied the request to amend the complaint. (*Id.* at 11.)[3]

16       Olga Galvan voluntarily dismissed her claims on November 1, 2011 (Doc. 93), leaving only

17  Silvestre Soto as a named plaintiff.

18       Plaintiff filed the motion for class certification now pending before the Court on September 30,

19  2013.  (Doc. 146.)  Plaintiff submitted 43 declarations of putative class members[4] in support of class

20  certification.  (Doc. 147, Exh. 3-48.)  Defendant filed its opposition to certification on October 28, 2013

21  (Doc. 150), as well as 34 declarations of its employees—including putative class members—in support

22  of its opposition.  (Doc. 151, Exh. 1-34.)  In addition, Defendant filed a motion to strike several of the

23  declarations by Plaintiff as irrelevant because the individuals failed to establish they worked during the

24

25      [3] After the Court denied the motion to amend the complaint, Javier Garcia and others filed a new class action
    complaint against Castlerock and two of its farm labor contractors: J.L Padilla & Sons Labor Service, Inc. and Melba

26  Nunez Contracting, in *Moreno v. Castlerock Farming*, Case No. 1:12-cv-00556-AWI-JLT.  Castlerock moved to dismiss
    the complaint, or in the alternative to stay the litigation.  Because a class had not yet been certified in this action, and it was

27  unclear whether Soto's claims would encompass the claims of the *Moreno* plaintiffs, the Court stayed the new action
    pending resolution of the matter now before the Court.

28      [4] Although Plaintiff submitted 43 declarations, there are only 42 declarants.  Guadalupe Verdugo Borbon provided
    two declarations: one executed in 2006 (Doc. 147-31), and the other executed in 2011 (Doc. 147-9).

3

1   proposed class period, for failure to be executed under penalty of perjury, and failure to appear for a

2   deposition as ordered.  (Doc. 153.)  The Court heard oral arguments of the parties regarding the

3   motions to strike with the motion for class certification on December 18, 2013.

4   **II.    LEGAL STANDARDS FOR CLASS CERTIFICATION**

5           Class certification is governed by the Federal Rules of Civil Procedure, which provide: "One or

6   more members of a class may sue or be sued as representative parties on behalf of all."  Fed. R. Civ. P.

7   23(a).  A class action is proper if:

8           (1) the class is so numerous that joinder of all members is impracticable; (2) there are
        questions of law or fact common to the class; (3) the claims or defenses of the
9           representative parties are typical of the claims or defenses of the class; and (4) the
        representative parties will fairly and adequately protect the interests of the class.
10

11  Fed. R. Civ. P. 23(a).  In general, these prerequisites are referred to as numerosity, commonality,

12  typicality, and adequacy of representation, and they "effectively limit the class claims to those fairly

13  encompassed by the named plaintiff's claims."  *General Telephone Co. of the Southwest v. Falcon*, 457

14  U.S. 147, 155-56 (1982) (citing *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980)).  When a

15  proposed class satisfies the prerequisites of Rule 23(a), the Court must determine whether the class is

16  maintainable under Rule 23(b).  *Leyva v. Medline Indus.*, 716 F.3d 510, 512 (9th Cir. 2013); *Narouz v.*

17  *Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

18          **A.    Rule 23(a) Prerequisites**

19                  1.    Numerosity

20          A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P.

21  23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute

22  limitations."  *EEOC*, 446 U.S. at 330.  Although there is no specific numerical threshold, joining more

23  than one hundred plaintiffs is impracticable.  *See Immigrant Assistance Project of Los Angeles Cnt.*

24  *Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . .

25  satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in

26  which courts certified classes with fewer than 100 members").

27                  2.    Commonality

28          Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

4

The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "However, it is insufficient to merely allege any common question." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Commonality must be shown by a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

### 3.     Typicality

The typicality requirement demands the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim or defense is not required to be identical, but rather "reasonably co-extensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (typicality is satisfied when named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

### 4.     Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied when the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

### B.     Rule 23(b) Certification

If an action meets the prerequisites of Rule 23(a), the party seeking class certification must demonstrate the action is appropriate under Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

614 (1997).  Under Rule 23(b)(1), a class is maintainable if there is a risk of inconsistent or varying adjudications from "prosecuting separate actions by or against individual class members."  *Id*.  In addition, a class may be certified if "adjudications with respect to individual class members . . . would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1)(B).

A class is maintainable under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate responding the class as a whole."  *Id*.  The Supreme Court explained, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. . . [I]t does not authorize class certification when each member would be entitled to an individualized award of monetary damages."  *Wal-Mart Stores*, 131 S. Ct. at 2557.

Class certification under Rule 23(b)(3) is an "adventuresome innovation," and allows for class certification in cases "in which class-action treatment is not clearly called for as it is in Rule 23(b)(1) and (b)(2) situations."  *Amchem Prods.*, 521 U.S. at 615.  Thus, a class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). Where the issues of a case "require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).  Consequently, the Court must examine "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.

## C.    Burden of Proof and Evidentiary Submissions

Parties seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied, and "must affirmatively demonstrate . . . compliance with the Rule."  *Wal-Mart Stores*, 131 S. Ct. at 2551; *Doninger v. Pacific Nw. Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  The Court must conduct a "rigorous analysis," which may require the Court "to probe behind the pleadings before coming to rest on the certification question."  *Wal-Mart Stores*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 160-61).  The Court has an affirmative duty to consider the merits of an action "to the extent

6

that they overlap with class certification issues." *Ellis*, 675 F.3d at 981 ("a district court *must* consider the merits if they overlap with the Rule 23(a) requirements") (citing *Wal-Mart Stores*, 131 S. Ct. at 2551-52). As a result, the Court may consider material evidence to determine Rule 23 requirements are satisfied. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

## III.   PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff asserts he and the proposed class members are fieldworkers who worked for Golden Grain Farm Labor Contractors at Castlerock Vineyards between November 1, 2001 through 2004. (Doc. 148 at 6.) According to Plaintiff, "Castlerock has long permitted an off-the-clock work practice of requiring fieldworkers to take the table-grape trays home and wash them without compensation." (*Id.*) In addition, Plaintiff asserts the fieldworkers "were forced to purchase" "clippers (scissors), glasses, holsters, gloves, and sunhats [that] were necessary equipment for their work in the fields and they were not reimbursed costs incurred acquiring this equipment." (*Id.* at 7, 11.) Based upon these factual allegations, Plaintiff moves to certify two classes of fieldworkers at Castlerock, defined as:

> The Trays Class:  All employees of Golden Grain Farm Labor Contractor who worked at Castlerock Vineyards from 11/9/2001[5] to August 2004 and wer[e] required to wash grape trays at home without compensation.

> The Tools Class:  All employees of Golden Grain Farm Labor Contractor who worked at Castlerock Vineyards from 11/9/2001 to August 2004 and were forced to purchase, without reimbursement, tools and necessary equipment to perform their jobs.

(Doc. 146 at 2.) Plaintiff contends the requirements of Rule 23(a) are satisfied for each class, and his "claims are certifiable under Rule 23(b)(3) because the common issues of the legality of Castlerock's policies and practices concerning its failure to compensate employees for routine off-the-clock work and its failure to proceed necessary work tools, or to reimburse employees for their purchase of such tools, predominate over any individual issues of law or fact." (Doc. 148 at 7.)

### A.   Rule 23(a) Requirements

#### 1.   Numerosity

According to Plaintiff, the evidence "shows a potential class that numbers in the thousands" because "during a single but representative harvest season, Castlerock had more than 800 Golden Grain workers harvesting grapes." (Doc. 148 at 15-16.) Plaintiff observes that the "Dailies" for labor

---

[5] At the hearing, Plaintiff stipulated the period for both classes would be amended to begin on December 6, 2001.

1    performed on August 14, 2004 by 16 Golden Grain crews, which were comprised of 42 to 66 workers,

2    indicate a total of 880 employees for that date alone.  (*Id.* at 16, n. 1.)  Therefore, Plaintiff asserts that

3    "[t]he proposed classes are sufficiently numerous as to make joinder of all members impracticable."

4    (Doc. 148 at 15, emphasis omitted.)

5                    2.    Commonality

6            According to Plaintiff, "The common-questions requirement of Rule 23(a)(2) is readily

7    satisfied" by both the proposed Trays Class and Tools Class.  (Doc. 148 at 17, 19.)  With regard to the

8    Trays Class, Plaintiff contends common questions capable of class-wide resolution include:

9            1) whether or not Defendant maintained a practice and policy from the beginning of the
             class period through the end of the 2004 harvest, which required fieldworkers to take
10           grape trays home and clean them without compensation; 2) whether the time
             fieldworkers spent cleaning trays at home is compensable; and 3) whether Defendant
11           bears the burden of proving that the class members did not wash trays at home because
             Defendant failed to record this time.

12

13   (*Id.* at 17.)  For the Tools Class, Plaintiff contends the common question "capable of resolution on a

14   class-wide basis is simply: whether employees should be reimbursed for Defendant's failure to provide

15   required tools that class members were forced to purchase because they were necessary for the job."

16   (*Id.* at 19.)  Plaintiff observes this Court found similar questions satisfied the commonality requirement

17   in *Rojas v. Marko Zaninovich, Inc.*, 2012 WL 439398 (E.D. Cal. Feb. 9, 2012) and *Arrendondo v.*

18   *Delano Farms Co.*, 2011 WL 1486612 (E.D. Cal. Apr. 19, 2011).  (*Id.* at 20-21.)

19                   3.    Typicality

20           Plaintiff contends the typicality requirement is satisfied because he "testified in deposition and

21   submitted a declaration attesting that he 1) took trays home, washed them and was not compensated

22   for this, and 2) was forced to purchase a pair of scissors from his foreman necessary for his job and for

23   which he was never reimbursed."  (Doc. 148 at 22.)  Given these facts, Plaintiff asserts he "has the

24   same or similar injury as the putative class members."  (*Id.*)

25                   4.    Adequacy of Representation

26           According to Plaintiff, he "wish[es] to serve as a class representative[] and has no known

27   conflicts with the putative class members concerning the issues, which are the subject of the litigation."

28   (Doc. 148 at 22.)  Plaintiff asserts he "has cooperatively participated in the litigation, answering

discovery and appearing for deposition." (*Id.*) (*see also* Doc. 147-1 at 3, Soto Decl. ¶ 7.)  Plaintiff contends he will "vigorously" pursue damages for the "violations that each putative class member suffered." (*Id.*)  Plaintiff knows of no unique defenses Castlerock may assert against him that it could not assert against other class members. (*Id.*)

Further, Plaintiff argues that the proposed class counsel "are competent and experienced in litigating large employment class actions, and in litigating class actions involving agricultural employees." (Doc. 148 at 22.)  Plaintiff reports the proposed counsel "have experience in prosecuting wage and hour class actions, employment litigation generally, and class actions specifically dealing with the identical issues presented here," including related matters in which classes have been certified by this Court. (*Id.*)  Therefore, Plaintiff contends the proposed class counsel will adequately represent the classes. (*Id.*)

### B.      Rule 23(b) Requirements

Plaintiff contends this class action meets the requirements of Rule 23(b)(3), and certification is proper because "Defendant's overall practices and polices related to the failure to compensate for tray washing and the failure to reimburse for necessary tool purchases predominate over any issues regarding potential individualized damages." (Doc. 148 at 23.)  Plaintiff asserts the ascertainability of the damages is not an issue because "representative evidence, industry custom and/or expert evidence" would resolve the questions of what tools were required for work and the cost, "the average number of trays each worker was responsible for[,] and the average amount of time it took to wash them." (*Id.* at 23-24.)  Also, Plaintiff concludes class treatment is superior to other available methods of litigation because putative class members are "seasonal agricultural workers" who would not likely have an interest in pursuing their own action given "their limited economic resources, lack of English language proficiency, and the severe difficulty of finding experienced counsel in rural areas." (*Id.* at 24-25.)

### IV.      DEFENDANT'S OPPOSITION TO CLASS CERTIFICATION

Defendant opposes certification of the proposed classes.  According to Defendant, class certification should be denied because:  (1)  Castlerock did not directly employ Plaintiff or the putative class members, and Plaintiff has not established the company was a joint employer to demonstrate standing, and (2) "the evidence supporting [P]laintiff's request to certify tray-washing and tools classes

1    is entirely anecdotal," which is contradicted by Defendant's evidence.  (Doc. 150 at 6-7.)  According to

2    Defendant, the evidence shows Plaintiff is unable to satisfy the requirements of Rule 23, and class

3    certification should be denied.

4          **A.**      **Joint Employment**

5          Defendant contends Castlerock and Golden Grain entered into an Employee Labor Agreement,

6    which "expressly stated that Golden Grain was an independent contractor and 'retained the right to

7    exercise full control and supervision of the Services and full control over the employment, direction,

8    method of performing, compensation, and discharge of all persons assisting in the Services.'"  (Doc.

9    150 at 12-13, quoting Doc. 147-7 at 2.)  The Employee Labor Agreement specified Golden Grain

10   possessed "the right to hire and terminate all laborers employed by Golden Grain, notwithstanding the

11   right of Castlerock to obtain removal of specified workers from the work crews assigned to the

12   Castlerock Services."  (*Id.* at 13, quoting Doc. 147-7 at 3.)  In addition, Defendant observes that the

13   agreement made Golden Grain responsible for "payment of its employees, including compliance with

14   Social Security, withholding, and all other regulations governing such matters," and Golden Grain was

15   required to "use due diligence and make all reasonable efforts in complying with all federal, state, and

16   local laws, rules, and regulations."  (*Id.* at 13, quoting Doc. 147-7 at 2, 3.)  Therefore, Defendant

17   concludes the Employee Labor Agreement "contemplated no joint employment relationship between

18   Castlerock and Golden Grain."   (*Id.* at 13.)

19         **B.**      **The Trays Class**

20         Defendant contends the Employee Labor Agreement between Castlerock and Golden Grain

21   provided that Castlerock would provide the trays used to harvest grapes for exclusive use by Golden

22   Grain employees.  (Doc. 150 at 12, citing Doc. 147-7 at 1; Morales Decl. ¶ 5.)  Further, Defendant

23   asserts the Employee Labor Agreement prohibited removal of the trays from the premises, making

24   such removal "grounds for immediate termination of th[e] Agreement."  (*Id.*)  Thus, Defendant asserts

25   that "[t]he Employee Labor Agreement…expressly forbade Golden Grain from requiring, or even

26   allowing, workers to take the trays home overnight."  (*Id.*)

27         In addition, Defendant asserts the evidence Plaintiff submits does not demonstrate Castlerock

28   had a policy requiring workers to wash trays at home.  (*See* Doc. 150 at 24-28.)  Defendant argues

1    Plaintiff is unable to satisfy the commonality and typicality requirements of Rule 23(a), because

2    Defendant presents "30 declarations from putative class members who did not wash trays at home,"

3    contradicting the claims of Plaintiff's declarants.  (*Id.* at 27.)  Given the conflicting anecdotal evidence,

4    Defendant argues this class cannot be certified.  (*Id.*, citing *Wal-Mart*, 131 S.Ct. at 2556-57.)  On the

5    other hand, even if the Court were to find Plaintiff satisfied the requirements of Rule 23(a), Defendant

6    argues the "stringent standard of Rule 23(b)(3) that a common question must predominate over

7    individual issues also has not been met."  (*Id.*)

8           **C.      The Tools Class**

9           Defendant asserts Golden Grain was not permitted to force workers to purchase tools under

10   their Employee Labor Agreement.  (Doc. 150 at 12.)  According to Defendant, "the Employee Labor

11   Agreement states that Castlerock 'will make available to Golden Grain certain, but not all, items of

12   equipment in its possession, for use exclusively by Golden Grain' in providing the labor services."

13   (*Id*, quoting Doc. 147-7 at 1.)  The same agreement "also obligated Golden Grain to provide all other

14   equipment necessary for the workers to perform their tasks."  (*Id.*)

15          Further, Defendant argues Plaintiff is unable to satisfy the requirements of Rule 23(a) for the

16   Tools Class.  Defendant observes that of the valid declarations "only [P]laintiff supports the tools

17   claim." (Doc. 150 at 27.)  Because "Plaintiff's declarants do not support the claim, and Castlerock's

18   declarants also refute it," Defendant asserts Plaintiff "failed to establish that the class is sufficiently

19   numerous under Rule 23(a)(1)."  (*Id.* at 26-27.)  Further, Defendant contends Plaintiff failed to satisfy

20   the commonality and typicality requirements in light of conflicting evidence.  (*Id.* at 27-28.)

21   **V.     PLAINTIFF'S REPLY**

22          According to Plaintiff, the arguments set forth By Defendant are "fundamentally flawed."

23   (Doc. 155 at 4.)  Plaintiff contends he has Article III standing because he has evidence that his "injury

24   is 'fairly traceable' to the actions of Defendant."  (*Id.*)  In addition, Plaintiff asserts the Court need not

25   determine the matter of joint employment because this Court has observed that "a determination of

26   'joint employer status was not properly part of a motion for class certification.'" (*Id.*, quoting *Rosales*

27   *v. El Rancho Farms*, 2012 WL 2684979, at *1 (E.D. Cal. July 6, 2012)).  Further, Plaintiff asserts the

28   "typicality, commonality and predominance elements of Rule 23" are satisfied.  (*Id.* at 5.)

### A.     Soto's standing

Plaintiff argues that he has Article III standing because the applicable California Wage Order defines "employer" as "one who 'employs or exercise control over the wages, or hours or working conditions of any person,'" and "the facts demonstrate that Defendant controlled the wages, hours and working conditions of the putative class members." (Doc. 155 at 6, quoting *Akaosugi v. Benihaha Nat'l Corp.*, 282 F.R.D. 241 (N.D. Cal. 2012)).  Plaintiff asserts "Defendant's FRCP 30(b)(6) witness testified that Castlerock set the wages paid to field workers" and "Castlerock controlled the working conditions, including…the policy surrounding meal periods." (*Id.* at 7-8, citing Lutz Depo. 60:21-61:24, 134:1-7.)  In light of evidence showing "Castlerock exercised control of fieldworkers wages, hours and working conditions," Plaintiff concludes "the injuries alleged at class certification—failure to reimburse for necessary tool expenditures and failure to compensate for tray-washing—are sufficiently 'traceable' to Defendant in order to show Article III standing." (*Id.* at 8.)

In addition, Plaintiff asserts he is able to represent the classes in this action because "he 1) took trays home, washed them and was not compensated for this, and 2) was forced to purchase a pair of scissors from his foreman necessary for his job and for which he was never reimbursed." (Doc. 155 at 9.)  Thus, Plaintiff contends "he has suffered the same harm as the putative class members." (Doc. 155 at 8, emphasis omitted.)

### B.     Rule 23 Requirements

Plaintiff reasserts his contention that the commonality and typicality requirements of Rule 23 are satisfied.[6] (Doc. 155 at 10-13.)  According to Plaintiff, "the evidence shows a practice of suffering and permitting uncompensated tray-washing." (*Id.* at 10, emphasis omitted.)  He observes Defendant's declarants fail to specifically assert they did not wash trays at home because they use the general term "equipment." (*Id.* at 11.)  Given this ambiguity, Plaintiff asserts that "the evidence that Castlerock had

---

[6] Plaintiff does not address the numerosity requirement on Reply, asserting "Defendant does not dispute that Plaintiff has met the numerosity or superiority prongs of Rule 23." (Doc. 155 at 10.)  However, Defendant challenged the numerosity of both the Trays Class and Tools Class in its opposition to class certification. (*See* Doc. 150 at 26-29.) Defendant analogized proposed Tray Class to a proposed class in *Rojas*, where the Court declined to certify a class for tray-washing in a period where there was no evidence to show the number of workers who were required to take trays home. (Doc. 150 at 28, citing *Rojas*, 2012 WL 439398 at *22-23).  In addition, Defendant challenged the numerosity requirement for the Tools Class, asserting that of the declarations validly before the Court, "only Plaintiff endorses the claim" and he "has thus failed to establish that the class is sufficiently numerous under Rule 23(a)(l)." (*Id.* at 26.)

1   a policy of *not* suffering and permitting class members to wash trays without compensation is lacking."

2   (*Id.*)  Further, Plaintiff notes there is conflicting evidence for "just a few crews," and Defendant's

3   declarants have not challenged the declarations of "class member[s] who worked in the crews of

4   Foremen Octaviano Quintino, Benito Perez, Raul Quintino and Guadalupe Garza." (*Id.*)  Consequently,

5   Plaintiff contends the evidence should not defeat a determination that the commonality and typicality

6   requirements are satisfied.  (*Id.* at 12.)

7       Similarly, Plaintiff contends the Rule 23 requirements are satisfied by the Tools Class because

8   "Defendant's workers declarations do not dispute that workers were not reimbursed for necessary

9   expenditures." (Doc. 155 at 12.)  Plaintiff asserts he has "submitted 16 class member declarations

10  which declare that 'during my employment with Castlerock, the company did not provide me all of the

11  necessary tools to perform my job.'" (*Id.* at 13, citations omitted.)  According to Plaintiff, the declarants

12  "all state that fieldworkers were required to purchase one or more of the following tools: shears, gloves,

13  sleeves or other tools and were not reimbursed by their employer." (*Id.*)  Plaintiff acknowledges

14  Defendant's declarants report they "have never been required to purchase tools or equipment while

15  working on a vineyard operated by Castlerock," but asserts Defendant's declarants "do[] not address

16  the case where class members purchased the tools without instruction by Castlerock." (*Id.*)  Plaintiff

17  contends this raises a different common question, namely: "whether the tools provided, if any, by

18  Defendant were sufficient to carry out the work and whether superior tools were necessary

19  expenditures." (*Id.*)

20  **VI.   EVIDENTIARY OBJECTIONS**

21      Defendant filed a "Motion to Strike" declarations filed in support of class certification, which

22  the Court construes to be evidentiary objections.[7]  (Doc. 153.)  According to Defendant, several of the

23  putative class member declarations "were not made under penalty of perjury and therefore fail to

24  comply with the requirements set forth in 28 U.S.C. section 1746;" some declarants fail to establish

25  they worked during the class period; and "certain of the declarations and deposition excerpts are

26  unreliable because the declarant previously refused to appear for or complete a deposition in this case."

27

28      [7] Because the evidentiary objections were filed as a separate "motion" before the Court, Plaintiff filed an
opposition thereto on December 4, 2013.  (Docs. 162-163.)

13

1   (*Id.* at 2.)  Defendant filed a second "Motion to Strike" new evidence submitted with Plaintiff's reply

2   brief, which the Court construed as further evidentiary objections.  (Doc. 160.)  In addition, Plaintiff

3   filed a "Motion to Strike" Defendant's declarations on December 17, 2013 (Doc. 167), which

4   Defendant opposed orally at the hearing on December 18, 2013.

5   **A.      Requirements of 28 U.S.C. §1746**

6          When a matter may be supported by a sworn declaration in writing, an individual may submit a

7   dated declaration that is signed as true under penalty of perjury pursuant to 28 U.S.C. § 1746, which

8   requires a declaration must be made "substantially" in the following language: "I declare (or certify,

9   verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date)."  28

10  U.S.C. § 1746(2).  The purpose of this affirmation is to be certain "the declarant understands the legal

11  significance of the declarant's statements and the potential for punishment if the declarant lies."  *United*

12  *States v. Bueno-Vargas*, 383 F.3d 1104, 1111 (9th Cir. 2004).

13         Defendant observes that fifteen of the declarations submitted by Plaintiff "simply say they were

14  given 'under oath,' without reference to the penalty of perjury or any federal or state law."  (Doc. 153 at

15  3.)  Specifically, the declarants asserted: "I declare under oath that the foregoing is true and correct."

16  (*See, e.g.*, Duran Decl., Doc. 147-11 at 5.)  According to Defendant, the "reference [to] an unstated

17  'oath'" renders these declarations "manifestly insufficient and unreliable."  (Doc. 153 at 5.)

18         In response, Plaintiff filed a declaration of Cameron Hubiak, a Certified Court Interpreter and

19  Translator who has been certified by the Judicial Council of the State of California, who translated the

20  declarations from Spanish to English.  (Hubiak Decl. ¶¶ 1-2, Doc. 157 at 2.)  Hubiak asserts:

21         [T]he statement "Declaro bajo juramento que lo anterior es correcto y verdadero" can
            be translated as "I declare under oath that the foregoing is true and correct" or as "I
22         declare under penalty of perjury that the foregoing is true and correct."  The above
            statements as translated equate to, and encompass the concept behind declaring under
23         penalty of perjury.

24         Therefore, the translations for the closing statements for Declarations of Guadalupe
            Verdugo Borbon, Franco Ensaldo, Noelia Duran, Maria Villegas, Raul Torres, Juan
25         Manuel Villagomez, Martha Garcia, Ramiro Garcia Maldonado, Michaela Ramirez
            Lopez, Zeneida Lopez Sierra, Elias O. Sierra, Maria Gallardo, Norma Medina, Nicolas
26         Moreno, Eufrocino Perez, Oscar Perez, and Enrique Duran [citation] can be translated
            as "I declare under penalty of perjury that the foregoing is true and correct."

27

28  (Hubiak Decl. ¶¶ 3-4, Doc. 157 at 2.)

14

Significantly, although Hubiak states the declaration *could be* translated to mean, "under penalty of perjury," Hubiak *did not* translate them in this manner.  Indeed, when Hubiak made the translations, he asserted, "I declare **under penalty of perjury** under the laws of the State of California that I personally translated the above mentioned document and **that it is true, accurate, and complete** to the best of my ability and knowledge." (*See, e.g.,* Doc. 147-19 at 6, emphasis added.)  With his new declaration, seemingly, Hubiak seeks not to directly *translate* the Spanish language version of the declarations to English, but rather to *interpret* the declarants' potential meaning.  The opinion that the oath "encompass[es] the concept behind declaring under penalty of perjury" is a legal conclusion, and goes to the knowledge of the declarants' state of mind.  However, the declarations were not translated to set forth evidence the declarant made the statements with the requisite mental state and there is no indication that the individuals were aware of their legal obligation to report truthfully or face criminal penalty.   Moreover, that the statement *may* be translated to mean "under penalty of perjury" does not explain why the phrase was not so translated, nor does it explain why the phrase for "under penalty of perjury" was not used by the declarants.[8, 9]

The statement that the facts were made "under oath" creates no more than a moral obligation to be truthful, and does not demonstrate the knowledge that failure to be truthful has the potential for consequences under the law.  Because there are no facts that demonstrate the individuals who made their declarations "under oath" understood "the legal significance of the … statements and the potential

---

[8] Haydee Claus, an interpreter certified by the Administrative Office of the United States Courts and the State of California, reports that "'penalty of perjury' is accurately translated into Spanish as 'pensa de perjurio.'" (Doc. 165 at 2, Clause Decl. ¶ 4.) As Plaintiff admits, this phrase was not used by these declarants.

[9] The Court declines to consider the declarations (Doc. 166-1-8) filed on December 17, 2013—the day before the hearing on the motion for class certification. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir.1990).  When questioned at the hearing why Plaintiff felt he could file a substantive reply on the topic and then, less than four court hours before the hearing, file additional declarations to support the reply, Plaintiff's counsel merely explained that they felt they had adequately addressed the issue in the reply.  This, of course, begs the question why then counsel felt they needed to file additional evidence or why they felt they should or could delay until the evening before the hearing to do so.

Moreover, in light of the striking similarity between all of the original declarations at issue and the striking similarity of all of the newly-filed declarations, it is clear that counsel—rather than the individual declarants—prepared the declarations.  Thus, in these circumstances, the suggestion that the declarants intended to say something other than what was printed on the page by counsel related to the "oath," is incredible. On the other hand, if they did, the Court is at a loss to understand their failure to require the document reflect this fact. In the face of Hubiak's declaration attached to each translation attesting he translated the documents truly and accurately, it is clear the declarants did not certify the information under penalty of perjury at the time of their declarations.

Nevertheless, even if the Court considered this new evidence, it makes no difference to the outcome given the significant conflicts in the evidence, as discussed below.

for punishment" for untruthful statements at the time they made the statements, the declarations do not satisfy the requirements of 28 U.S.C. § 1746. *See Bueno-Vargas*, 383 F.3d at 1111. Therefore, the declarations of Noelia Duran (Doc. 147-11), Maria Villegas (Doc. 147-12), Raul Torres (Doc. 147-13), Juan Manuel Villagomez (Doc. 147-14), Martha Garcia Vargas (Doc. 147-15), Ramiro Garcia Maldonado (Doc. 147-16), Michaela Ramirez Lopez (Doc. 147-17), Zeneida Lopez Sierra (Doc. 147-18), Elias O. Sierra (Doc. 147-19), Maria Gallardo (Doc. 147-20), Norma Medina (Doc. 147-21), Nicolas Moreno (Doc. 147-22), Eufrocino Perez (Doc. 147-23), Oscar Perez (Doc. 147-24), and Enrique Duran (Doc. 147-25) are **STRICKEN**.

### B. Declarants who did not work during the proposed class period

According to Defendant, "12 of the 43 declarations submitted by plaintiff fail to establish that the declarant worked during the proposed class period." (Doc. 153 at 6.) Defendant asserts the 12 declarations are deficient because:

- Olga Garcia, Gabriel Ortiz[] Herrera, [and] Gricelda Gonzales Vega admit that they did not work during the class period, stating that they worked from "1998-2000," during "September 2004," and "from August to September 2004," respectively. Doc. 147-29, 147-30, 147-42.

- Inez Garcia Rodriguez, Jose Luis Campos, Jose Luis Mendoza, and Maria Garcia, submit declarations that fail to include any employment dates. Doc. 147- 33, 147-35, 147-36, 147-38.

- Elias Gallardo, Eva Gomez Martinez, and Soledad Moreno admit that they cannot recall the dates of their employment. Doc. 147-26, 147-27, 147-48.

- Noelia Duran and Enrique Duran also are unsure of their employment dates, stating that they worked during either 2004 or 2005. Doc. 147-11, 147-25.

Defendant argues that because the individuals failed to establish they worked on Castlerock properties during the class period, the declarations should be excluded. (*Id.*, citing *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 234 (C.D. Cal. 2006) ("Because he was not employed by Defendant during the class period, his declaration is excluded.") *aff'd*, 464 F. App'x 636 (9th Cir. 2011)).

In response, Plaintiff asserts that seven of the identified declarants "appear in Defendant's 'Employee Master List Summary' produced during discovery and contains dates of employment that fall during the proposed class period." (Doc. 162 at 4.) Specifically, the "Employee Master List Summary" indicates Olga Garcia, Jose Mendoza, Soledad Moreno, Enrique Duran, Elias Gallardo, Eva

Gomez Martinez, and Jose Luis Campos had employment dates falling within the class period.  (*Id.*, citing Doc. 162, Exh. 1.)  Although the other declarants are not identified in the employee list and "Plaintiff has not been able to locate the employment dates," Plaintiff argues it "does not mean that they did not work during the class period." (*Id.*)  Further, Plaintiff asserts Ms. Duran's declaration should be given deference" because she estimated her dates of employment as 2004 or 2005, and it is not clear that she did not work during the class period. [10]  (*Id.*)

Importantly, if a declarant did not work for Golden Grain at a Castlerock property during the class period, the declaration is not relevant.  Because there is no affirmative evidence that Gabriel Ortiz Herrera, Gricelda Gonzales Vega, Inez Garcia Rodriguez or Maria Garcia  worked during the class period, their declarations will be excluded and the motion **GRANTED**.  However, because there is evidence presented that Olga Garcia, Jose Luis Campos, Jose Luis Mendoza, Elias Gallardo, Eva Gomez Martinez, Soledad Moreno and Enrique Duran were employed during the class period and each asserts that he or she worked for Golden Grain at Castlerock, Defendant's motion to strike these declarations for the employee's failure to work during the proposed class period is **DENIED**.[11, 12]

### C.    Declarants who did not complete depositions

Defendant observes that Plaintiff submitted evidence in support of class certification from three individuals who failed to complete depositions:  Olga Galvan, Guadalupe Borbon, and Franco Ensaldo.  (Doc. 153 at 4.)  According to Defendant, by filing declarations from these individuals, Plaintiff "reneges on his prior agreement to withdraw the[] declarations from consideration in connection with his motion to compel further discovery."  (*Id.* at 7.)

_____

[10] Plaintiff has the burden of proof on establishing the Fed. R. Cvi. P. 23(a) elements.  If Ms. Duran, in truth, worked only in 2005, her declaration is not relevant.  However, because the Court strikes Ms. Duran's declaration for her failure to make the statements under penalty of perjury, the Court need not address whether it would also strike it for failing to provide a certain employment date.

[11] Defendant argues the records identified by Plaintiff "fail to establish that these individuals are putative class members… because the records show that the employees worked for Castlerock, not Golden Grain." (Doc. 164 at 5, citing Doc. 163 at 1.)  However, each of these individuals asserted he or she was an employee of Golden Grain and worked in the Castlerock vineyards.  (*See* Doc. 147-26,  Gallardo Decl. ¶ 2; Doc. 147-27, Martinez Decl. ¶ 1; Doc. 147-35, Campos Decl. ¶ 1; Doc. 147-36, Mendoza Decl. ¶ 1; Doc. 147-42, Garcia Decl. ¶¶ 1-2.)  Taken together, it appears the individuals may offer relevant evidence for the Court's consideration about Defendant's policies and practices during the class period.

[12] The declaration of Enrique Duran has been stricken, however, for Mr. Duran's failure to make the statements under penalty of perjury.

### 1.    Testimony of Olga Galvan and Guadalupe Borbon

In response, Plaintiff argues the testimony of Ms. Galvan and Ms. Borbon "is relevant and should not be stricken." (Doc. 162 at 5.)  Plaintiff contends that the declarants appeared for deposition, but refused to make further appearances because "they clearly felt intimidated and under attack at their depositions." (*Id.*)  There is no evidence to support this assertion and, despite the Court reading the entirety of both transcripts, the Court finds no evidence of this and none has been identified.

As Defendant observes, the Court struck declarations from individuals who failed to appear for their depositions in a related action:  *Rojas v. Marko Zaninovich, Inc.*, 2012 WL 439398 (E.D. Cal. Feb. 9, 2012).  However, in *Rojas* the declarant whose testimony was stricken from consideration failed to appear for any deposition.  Here, in contrast, Ms. Galvan and Ms. Borbon appeared for deposition and testified under penalty of perjury, but failed to appear for further testimony.

Ms. Borbon's deposition was brief and there was little testimony on the pertinent issues.  Ms. Galvan's deposition was much longer and, although she denied awareness of anyone—including Plaintiff—ever buying tools for use on the job, she testified about taking 15 trays home to wash every day.  Notably, despite the agreement that Ms. Galvan would return to complete her deposition, she failed to do so.

On March 24, 2011, Plaintiff was ordered to produce Ms. Galvan and Ms. Borbon for deposition. (Doc. 35.)  Again on July 7, 2011, the Court ordered Ms. Galvan to submit to deposition. (Doc. 60.)  Once again, on September 22, 2011, the Court ordered Ms. Galvan to attend her deposition. (Doc. 83.)  Notably, at no time during this process was the issue of intimidation of the witnesses brought to the Court.

Pursuant to the Federal Rules of Civil Procedure, if a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed.R.Civ.P. 37(b). The Ninth Circuit has explained Rule 37 "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 857, 589 (9th Cir.1983) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

Here, indisputably, Plaintiff was obligated to produce these witnesses for full deposition.

18

1    Apparently, realizing that Ms. Galvan's failure to complete her deposition was so fundamentally unfair

2    to Defendant, Ms. Galvan's case was dismissed upon the stipulation of the parties on November 1,

3    2011.  (Doc. 93.)  On the other hand, Defendant had little opportunity to ask Ms. Borbon questions

4    regarding the pertinent topics.  The assertion that she presented "directly related to the issues at the crux

5    of the pending class certification motion," is an incorrect summary of the deposition.  Indeed, the

6    transcript reveals virtually nothing asked of her relates to the narrow classes sought by Plaintiff to be

7    certified and it is virtually worthless on these topics.  The *only* passing value is Ms. Borbon's testimony

8    is her statement that she took equipment, including trays, home every night and brought it back with her

9    in the morning.  (Doc. 147-5) She explained she did this because she was afraid if she left the

10    equipment in the field, it would get lost and then she would have to pay for it.  *Id.*  Defendant was not

11    able to ask any questions related to the issues at hand because Ms. Borbon refused to return to complete

12    her deposition.  Thus, had Ms. Borbon failed to appear for the first session of the deposition, it does not

13    appear Defendant would have been any worse off.

14          Because Plaintiff was ordered to produce these witnesses for deposition, the suggestion that he

15    was not obligated to produce them for *meaningful* deposition is without support. Indeed, Fed. R. Civ. P.

16    37(a)(4) instructs that an incomplete disclosure or response—such as an incomplete deposition—is to

17    be treated as "a failure to disclose, answer or respond."  The Court finds Defendant would be unduly

18    prejudiced if Plaintiff was permitted to fail to produce deponents for  a full and meaningful deposition

19    but still be permitted to rely upon untested declarations and the transcripts of incomplete depositions.

20    Thus, pursuant to Fed. R. Civ. P. 37, the declaration of Guadalupe Verdugo Borbon and the transcript

21    of her partial deposition (Docs. 147-5; Docs. 147-9) and the transcript of Olga Galvan's partial

22    deposition (Doc. 147-3) are **STRICKEN**.[13]

23                    2.      Declaration of Franco Ensaldo

24          Plaintiff acknowledges that Mr. Ensaldo "refused to submit for any deposition appearance," and

25    as such Plaintiff agreed to withdraw his declaration.  (*Id.* at 5-6.)  Consequently, Defendant's motion to

26    strike Mr. Ensaldo's declaration is **MOOT**.

27    

28    _____
           [13] However, even if the Court considered this evidence, it would not impact the outcome of the motion and,
      indeed, for illustration purposes, the Court refers to this evidence below.

19

**D.      Evidence submitted by Plaintiff on reply**

Defendant requests the Court strike evidence submitted by Plaintiff with his reply brief in support of his argument that Castlerock and Golden Grain jointly employed the putative class members. (Doc. 160.)  Because the Court declines to the issue of joint employment, as discussed below, the evidence has not been considered by the Court and Defendant's request to strike is **MOOT**.

**VII.     DISCUSSION AND ANALYSIS**

As an initial matter, Defendant asserts Plaintiff "has not established that he was jointly employed by Castlerock, so he does not have Article III standing to seek class certification." (Doc. 150 at 20.)  Defendant observes that the Ninth Circuit has determined "[a] putative class plaintiff must establish standing before a class may be certified." (*Id.*, emphasis omitted) (citing *Lee v. State of Or.*, 107 F.3d 1382, 1390 (9th Cir. 1997)).  Defendant argues Plaintiff "must establish that the defendant is his employer under the applicable laws before any class may be certified." (*Id.* at 21) (citing *Akaosugi v. Benhihaha Nat'l Corp.*, 282 F.R.D. 241, 258 (N.D. Cal. 2012)).

The Supreme Court explained: "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).  The burden of establishing standing falls upon the plaintiff.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Bennett v. Spear*, 520 U.S. 154, 167 (1997) ("each element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation").  The Ninth Circuit explained the causation element is not satisfied when an "injury caused by a third party is too tenuously connected to the acts of the defendant." *Citizens for Better Forestry v. U.S. Dept. of Agric.*, 341 F.3d 961, 975 (9th Cir. 2003).

Plaintiff contends the standing requirement is satisfied in this action because there is evidence showing that "Castlerock exercised control of fieldworkers wages, hours and working conditions" for the putative class members." (Doc. 155 at 8.)  For example, Javier Garcia testified that Castlerock

1    employees Raul and Dario supervised the foremen, and were responsible for all the crews in the

2    vineyards.  (Garcia Depo. 71:8-72:14.)  In addition, Plaintiff asserts "the injuries alleged at alleged at

3    class certification—failure to reimburse for necessary tool expenditures and failure to compensate for

4    tray-washing—are sufficiently 'traceable' to Defendant."  (Doc. 155 at 8.)  Indeed, the class definitions

5    assume a joint employment relationship by encompassing "employees of Golden Grain Farm Labor

6    Contractor who worked at Castlerock Vineyards."  For purposes of class certification, the Court finds

7    Plaintiff has sufficiently stated he has standing pursuant to Article III.  However, the issue of whether

8    Castlerock may be held liable as a joint employer of Plaintiff and the putative class members is

9    reserved for a dispositive motion and is not determined at this time.  *See Rosales v. El Rancho Farms*,

10   2012 WL 2684979 (E.D. Cal. July 6, 2012) ("joint employer status is not dispositive to a motion for

11   class certification" and the issue of joint employment "is more properly the subject of a later summary

12   adjudication motion that would be binding on a certified class"); *Baghdasarian v. Amazon.com, Inc.*,

13   2009 WL 4823368, at *4 (C.D. Cal. Dec. 9, 2009) (allegations of standing found sufficient at the class

14   certification stage do not definitively establish standing for purposes of summary judgment), *aff'd*, 458

15   Fed. App'x 622 (9th Cir. 2011); *see also Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th

16   Cir. 1983) ("it is improper to advance a decision on the merits to the class certification stage").

17         Accordingly, the Court must determine whether the proposed classes satisfy the requirements

18   of Rule 23 for class certification.

19         **A.      The Trays Class**

20         Plaintiff observes: "Under California law employees must be paid for all hours worked,

21   whether the work is required or employees are suffered or permitted to work.  (Doc. 148 at 10) (citing

22   8 CA ADC § 11140, para. 2(G); *Martinez v. Combs*, 49 Cal.4th 35, 69-70 (2010)).  According to

23   Plaintiff, the putative class members were not paid for all hours in violation of California's wage and

24   hour laws, because the workers were required to take trays home to wash after the end of their shifts.

25   Therefore, Plaintiff seeks to certify a class of workers who "washed grape trays at home without

26   compensation."  (Doc. 148 at 6.)  Because the off-the-clock tray washing time would not be

27   documented in time and payroll records, Plaintiff submits anecdotal evidence to demonstrate the

28   requirements of Rule 23 are satisfied.

21

1.      Numerosity

Plaintiff asserts that the "[e]vidence in this case shows a potential class that numbers in the thousands," because "in a single but representative harvest season, Castlerock had more than 800 Golden Grain workers harvesting grapes." (Doc. 148 at 15-16.)  Plaintiff observes the "dailies" for 16 Golden Grain crews at various Castlerock locations identify 880 workers on August 14, 2004.  (*Id.*, n. 1; *see also* Lutz Depo. 119:3-10) (explaining a day in August could be representative of the number of workers and type of work done for Castlerock)).  However, there is no evidence before the Court regarding the number of individuals who took trays home and washed them without compensation.[14] Therefore, Plaintiff has failed to meet his burden to demonstrate the numerosity requirement is satisfied.  *See Wal-mart Stores*, 131 S. Ct. at 2551 (a plaintiff "must be prepared to prove that there are *in fact* sufficiently numerous parties" ); *see also Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999) ("Plaintiffs must show some evidence of or reasonably estimate the number of class members").

2.      Commonality

Plaintiff asserts there are several questions capable of resolution on a class-wide basis, including: (1) whether Defendant had practice and/or policy requiring fieldworkers to take trays home and clean them without compensation, (2) whether the time spent cleaning trays may be compensable; and (3) "whether Defendant bears the burden of proving that class members did not wash trays at home because Defendant failed to record this time."[15]  (Doc. 148 at 17.)  Notably, Plaintiff bears the

---

[14] Plaintiff appears to imply that *all* the workers were assigned trays and took these trays home for washing. However, Plaintiff does not identify any evidence supporting this contention and, as discussed below, fails to demonstrate Castlerock had a common practice or policy of requiring workers to take the trays home to wash such to justify an inference that the proposed class is sufficiently numerous.

[15] This presents a circular argument.  Despite no evidence of a policy or practice of requiring off-the-clock work, Plaintiff argues that because there is no documentation that employees worked off-the-clock, Defendant must prove the employees *did not* work off-the-clock.  However, of course, if the time was documented, there could be no off-the-clock claim.  The suggestion Plaintiff can rely upon this faulty logic to shift the burden of proof, is without support.  In *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1051-1052 (2012), the California Supreme Court held that when employees are clocked out, this "creates a presumption they are doing no work."  To establish liability, a plaintiff is required to demonstrate the employer knew or should have known that "off-the-clock work was occurring."  *Id.*  The Court continued, "Nothing before the trial court demonstrated how this could be shown through common proof, in the absence of evidence of a uniform policy or practice.  Instead, the trial court was presented with anecdotal evidence of a handful of individual instances in which employees worked off the clock, with or without knowledge or awareness by Brinker supervisors. On a record such as this, where no substantial evidence points to a uniform, companywide policy, proof of off-

22

burden of proving that Defendant had a uniform practice or policy; if Defendant did not, the second question is moot and, therefore, the commonality requirement is not satisfied.[16]  *See Gonzalez v. Millard Mall Service, Inc.*, 281 F.R.D. 455, 462 (N.D. Cal. 2012).  To demonstrate this requirement is satisfied, Plaintiff relies upon the testimonial evidence of putative class members.

According to Plaintiff, "Castlerock and Golden Grain required employees to take trays home and wash them." (Doc. 147-1, Soto Decl. ¶ 6.)  Plaintiff testified that he was told by Dario, who spoke to the workers at the morning meeting, told the workers the trays were to be clean "[a]nd if there was stains, he would stop someone from working." (Soto Depo. 41:21-22, 146:4-11.)  In addition, Plaintiff asserts that at the end of his first day Jose Padilla told Plaintiff to take his trays home for cleaning. (*Id.*, 146:24-147:8.)  Plaintiff reported he washed an average of "fifteen (15) trays twice a week because [his] wife and another crew member would help [him] wash the trays the remainder of the week, up to six days." (*Id.*)  He estimated this task took 30 minutes to an hour each time. (Doc. 147-1, Soto Decl. ¶ 6*; Soto Depo. 148:2-16.)

Plaintiff's putative class member declarants assert they were required to wash trays at home without compensation, although the number of trays washed and the amount of time taken to do so varies among the declarants.  (*See, e.g.,* Doc. 147-37, Rodriguez Decl. ¶ 6; Doc. 147-41, Pantoja Decl. ¶ 6; Doc. 147- 46, Martinez Decl. ¶ 46.)  For example, Frederico Moreno reported he was "required to wash 3 trays in [his] home[] for approximately fifteen (15) [to] twenty (20) minutes, without pay." (Doc. 147-28, Moreno Decl. ¶ 6.)  According to Mr. Moreno, this "occurred normally six times a week." (*Id.*)  Likewise, Guadalupe Verdugo Borbon reported she washed "5 trays at home …on a daily basis," which took about fifteen to twenty minutes each time.  (Doc. 147-30, Borbon Decl. ¶ 6.)  Others, such as Jorge Torres Salgado and Leticia Arredondo Delgado, report they washed seven trays at home approximately twice a week and this took 15 to 20 minutes.  (Doc. 147-35, Salgado Decl. ¶ 6;

---

the-clock liability would have had to continue in an employee-by-employee fashion, demonstrating who worked off the clock, how long they worked, and whether Brinker knew or should have known of their work. Accordingly, the Court of Appeal properly vacated certification of this subclass."  *Id.*

[16] Likewise, the law is clear Plaintiff bears the burden of proving commonality. *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S. Ct. 2541, 2550-2551 (2011).  However, mere common questions are insufficient. Instead, Plaintiff must demonstrate there are common answers which "are apt to drive the resolution of the litigation."  *Id.* at 2551.  Plaintiff fails to demonstrate an answer to his third proposed common question is capable of driving resolution of the litigation.

Doc. 147-37, Delgado Decl. ¶ 6.)

On the other hand, the evidence submitted by the Plaintiff demonstrates Castlerock took steps to ensure trays and other equipment were not taken from Castlerock's premises.  (Doc. 147-7 at 2.)  The agreement between Castlerock and Golden Grain reads, "[R]emoval of the equipment from the premises of Castlerock shall be a breach of this Agreement, and grounds for immediate termination of this Agreement."  (*Id.*)  Notably, in the deposition transcript proffered by Plaintiff of Rogelio Casimiro who operated Golden Grain from 1999, Casimiro testified that Castlerock provided all of the trays and they were left at the job site or were taken home by a particular foreman.  (Casimiro Depo. at p. 192-194.)  Casimiro affirmed that the workers did not clean their own trays.  (*Id*. at 194.)

Lawrence Lutz, Controller for Castlerock and the company's Rule 30(b)(6) designee, testified it was Castlerock's policy for the foremen to wash the trays prior to 2006.  (Lutz PMK Depo. 109:21-23.)  Mr. Lutz explained the foremen washed the trays with pressure washers or other water sources at Castlerock's "ranch shops."  (*Id.* at 108:1-6, 109:1-15.)[17]  This policy is confirmed Martha Ayon, Alejandro Morales, Alfredo Gallardo, and Salvador Lemus, who worked as foremen for Golden Grain and informed their crew members "they were not to take the trays home with them."  (Doc. 151-1, Ayon Decl. ¶ 3; Doc. 151-2, Morales Decl. ¶ 3; Doc. 151-3, Gallardo Decl. ¶ 3; and Doc. 151-4, Lemus Decl. ¶ 3.)  Specifically, Ms. Ayon reports she "collected the trays at the end of each work day and washed them a few times a week in the field."  (Ayon Decl. ¶ 3.)  She estimates it took "approximately 20 to 25 minutes to wash approximately 150 to 200 trays."  (*Id.*)  Similarly, Mr. Gallardo asserts:

> During the harvest season, the workers placed the grapes they harvested in trays or "bandejas."  I always told the workers on my crew that they were not to take the trays home with them.  During the 2002 through 2004 time period, I collected the trays after the end of each work day and washed them a few times a week in the field…[I]t only took me approximately 25 to 30 minutes to wash approximately 150 to 200 trays because they don't get that dirty.

(Gallardo Decl. ¶ 3.)  Mr. Morales estimated it took him "30 to 35 minutes to wash approximately 200 trays," while Mr. Lemus believed he took "35 to 40 minutes to wash approximately 100 to 150 trays."

---

[17] Plaintiff contends the Court should find Mr. Lutz is not credible because the putative class members contradict Mr. Lutz's testimony that the unwritten policy was for the foreman to wash the trays, and Mr. Lutz did not personally witness a foreman transporting or cleaning trays.  Significantly, however, the Court does not weigh the evidence or make a credibility determination when examining whether the requirements of Rule 23 are satisfied.  *See Marlo v. UPS, Inc.*, 639 F.3d 942, 949 (9th Cir. 2011).

1    (Morales Decl. ¶ 3; Lemus Decl. ¶ 3.)  Each foreman asserts their crew members did not take trays

2    home or wash the trays "off the clock."  (*Id.*; Ayon Decl. ¶ 3; Gallardo Decl. ¶ 3.)

3         In addition, 30 fieldworkers employed during the class period by Golden Grain for work at

4    Castlerock properties report they have never been required to take equipment home to wash.[18]  (*See*

5    Hanlon Decl., Exh. 5-34.)  Marcela Lopez asserts she has "worked on table grape vineyards operated

6    by Castlerock Farming and Transport, Inc…every year since about 1997," and she has never worked

7    after the "end" time or taken equipment home for washing.  (Doc. 151-16, Lopez Decl. ¶¶ 1, 7.)

8    Similarly, Teresa Fernandez has been employed to work at vineyards operated by Castlerock "every

9    year since about 1998," and reports she has "never" worked after the end of the shift to wash items at

10   home.  (Doc. 151-6, Fernandez Decl. ¶¶ 1, 7.)  Each of Defendant's declarants report they "have never

11   taken equipment home to wash, clean, or repair after the 'end' time of [the] shift."  (*See, e.g.*, Doc.

12   151-1, Garcia Decl. ¶ 7; Doc. 151-27, Rivera Decl. ¶ 7; Doc. 151-32, C. Gonzalez Decl. ¶ 7.)  Thus,

13   Defendant presents evidence from both supervisors and fieldworkers to support its assertion that

14   Castlerock did not require employees to perform off-the-clock work by washing trays at home.

15        Importantly, the evidence provided by Plaintiff and Defendant regarding a "practice" of

16   requiring fieldworkers to perform tray washing at home without compensation is directly in conflict.

17   Previously, this Court noted, "[C]onflicting testimony poses a significant concern for managing [a]

18   class action."  *Garcia v. Sun Pacific Farming Coop.*, 2008 WL 2073979 (E.D. Cal. May 14, 2008),

19   *aff'd* 359 Fed. App'x. 724 (9th Cir. Nov. 13, 2009).  The Northern District has also found conflicting

20   evidence concerning alleged wage-and-hour law violations defeats a finding of commonality for

21   purposes of class certification.  In *Gonzalez*, the court noted the plaintiffs "provided 112 questionnaires

22   filled out by putative class members," some of which indicated the defendant had not provided required

23   rest breaks, and some which indicated the defendant failed to provide meal breaks.  *Gonzalez*, 281

24   F.R.D. at 263.  The defendant filed declarations from over 200 putative class members disputing the

25   _____

26   [18] Plaintiff objects that these individuals did not specifically state they never took *trays* home to wash, and rather
     stated they never took any "equipment" home to wash it.  (Doc. 155 at 11.)  However, the declarants assert the "tools and

27   equipment" used at Castlerock included for harvesting grapes included "pruning shears and scissors, *tubs*, bags, pampers,
     [and] scales."  (*See, e.g.,* Doc. 151-17 Marin Decl. ¶ 9, emphasis added.)  There is no reason to believe that in stating they
     were never required to take "equipment" home to wash, the declarants were excluding "trays" or "tubs." Further, the

28   declarants indicate they have never worked past the official end time of a shift.  (*See, e.g.,* Marin Decl. ¶ 7.) This language
     indicates that no work, no matter the type, was done by the workers after the end of the shift.

plaintiffs' claims. *Id.* The court explained that "[t]he conflicting evidence reveals [the defendant] did not have a uniform practice." *Id.* The court continued: "Because of the varying declarations and conflicting facts of the putative class members, Plaintiffs have failed to show that Defendant[] had a common policy…" *Id.* at 463-64 (citing *Garcia*, 359 Fed. App'x at 726; *Rosales v. El Rancho*, 2012 WL 292977 (E.D. Cal. Jan. 31, 2012)).

In *Garcia*, the plaintiffs presented 7 employee declarations in which they claimed the defendant instituted employment policies that required off-the-clock work, failed to permit meal and rest periods, and did not reimburse workers for tool expenses. Opposing class certification, the defendants presented 33 declarations from employees—some of whom were from the same crews as the plaintiff's declarants —who reported they did not work off-the-clock, and that the defendants provided meal and rest periods, as well as necessary tools. *Id.*, 2008 WL 2073979 at *10-12. The Court observed:

> Based on the evidence before the Court, there is not consistent application of the wage and hour laws between and among the various Crews. Some persons within a Crew are given meal and rest breaks, while others in the same Crew are not given meal and rest breaks. Unlike the evidence in *Dukes*, there is no strong evidence of company wide policies and corporate structure. The evidence before this Court demonstrates significant differences between the crews and individuals and no commonality.

*Id.* at *11. Therefore, the Court concluded the plaintiff was unable to satisfy the commonality requirement. *Id.* In affirming the Court's decision, the Ninth Circuit explained that the conflicting evidence did "not establish common wage and hour practices," and the plaintiffs "failed to demonstrate that proposed class members 'share legal issues with divergent factual predicates' or a 'common core of salient facts coupled with disparate legal remedies.'" *Garcia,* 359 Fed. App'x at 726 (quoting *Hanlon*, 150 F.3d at 1019).

Likewise, in *Arrendondo v. Delano Farms Co.*, 2011 WL 1486612 (E.D. Cal. Apr. 19, 2011), the Court observed the "conflicting evidence warrants denial of certification." *Id.*, 2011 WL 1486612, at *9. However, in *Arrendondo*, the Court found the evidence was not in conflict, because the defendants' declarants did not identify their dates of employment, or the period of time to which the testimony applied. *Id.* at *10. Specifically, the Court observed:

> Each declarant is a current employee, but gives no evidence of the duration of their employment or the time period for which the testimony applies. The implication is that because the declarants are current employees, and the declarant's declarations are worded in the present tense, the testimony applies for the current employment practices.

1        [Citation]. The declarants do not provide sufficient evidence of labor practices during
2   any period other than the current time period.

3   *Id.* at *10 (citation to the record omitted).  Further, the Court noted the plaintiffs presented evidence

4   explaining the defendants' labor practices changed in 2010, and the current labor practices differed

5   from former labor practices.  *Id.* at *11.  Consequently, the Court found the plaintiffs "offered a

6   reasonable explanation of why, what appears to be conflicting declarant testimony, is not conflicting at

7   all." *Id.*

8        Though Defendant's declarants are currently employed by various farm labor contractors on

9   Castlerock properties, unlike the declarants in *Arrendondo*, each declarant identified the foreman for

10  which he or she worked while employed by Golden Grain during the class period.  The evidence now

11  before the Court is similar to that presented in *Garcia*.  While Plaintiff's declarants assert they were

12  required to perform tray washing without compensation, Defendant presents declarations from

13  individuals *with the same foremen*, who they have "never worked any time for which [they] were not

14  paid on a vineyard operated by Castlerock."  For example, Jose Gallardo was the foreman for both

15  Hermilio Almaraz Santos and Freddi Morales in 2003.  (Doc. 147-32, Santos Decl. ¶¶ 2-3; Doc. 151-

16  19, Morales Decl. ¶ 1.)  Mr. Santos reports he was required to wash trays at home two or three days per

17  week, which took about 15-20 minutes each time, while Ms. Morales reports she was never required to

18  take items home to wash, or work without compensation while working on a vineyard operated by

19  Castlerock  (*Compare* Santos Decl. ¶ 6 *with* Morales Decl. ¶ 7.)  In addition, Alejandro Morales was

20  the foreman for Sofia Pantoja and Lorraine Rivera during the 2003 harvest.  (Doc. 147-47, Pantoja

21  Decl. ¶¶ 2-3; Doc. 151-27, Rivera Dec. ¶ 1 .)  However, Ms. Pantoja reports she was required to take

22  trays home to wash while Ms. Rivera asserts she did not do so, and did not work after the "end" time.

23  (*Compare* Pantoja Decl. ¶ 6 *with* Rivera Decl. ¶ 7.)   Although Jorge Torres Salgado asserted he was

24  required to wash trays at home while working under Pedro Rivera, other crew members report they

25  never took the equipment home for washing.  (*Compare* Doc. 147-34, Salgado Decl. ¶ 6 *with* Doc. 151-

26  8, E. Garcia Decl. ¶ 7, Veneces Decl. ¶ 7.)

27       Plaintiff maintains that "the evidence that Castlerock had a policy of *not* suffering and

28  permitting class members to wash trays without compensation is lacking." (Doc. 155 at 11.)  However,

27

1    under California wage-and-hour law, "that employees are clocked out creates a presumption they are

2    doing no worker, a presumption [the named plaintiff] and putative class members have the burden to

3    rebut." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1051 (2012). Plaintiff has the

4    burden of demonstrating "common proof, in the absence of evidence of a uniform policy or practice."

5    *Id.* The evidence presented by the parties provides neither common proof nor demonstrates a uniform

6    practice or policy. In light of the dissimilarities and conflicting testimony of putative class members,

7    the Court is unable to find a contention "capable of classwide resolution." *See Wal-Mart Stores*, 131 S.

8    Ct. at 2551. Consequently, Plaintiff failed to demonstrate the commonality requirement is satisfied.[19]

9                    3.    Typicality

10       "The commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S.

11   at 157 n.14. Typicality inquires whether proposed class representatives "have the same or similar

12   injury" and "have been injured by the same course of conduct" as putative class members. *Hanon*, 976

13   F.2d at 508.

14       In *Washington v. Joe's Crab Shack*, 271 F.R.D. 629 (N.D. Cal. 2010), the plaintiff alleged

15   wage and hour violations, including untimely meal and rest breaks, and provided declarations of six

16   putative class members. *Id.* at 633-34. These declarations were contradicted by declarations provided

17   by the defendant. *Id.* For example, 19 of the defendant's declarants reported the defendant "made

18   meal and rest breaks available, but that they sometimes (or always) chose not to take them." *Id.* at

19   634. In addition, most of the declarants reported "they have never been asked to work off-the-clock."

20   *Id.* Although the court found the plaintiff' established a common question—whether the defendant's

21   practices constitute violations of California law—the plaintiff failed to demonstrate typicality due to

22   the conflicting evidence. The court observed:

23           [P]laintiff's claims appear to be reasonably co-extensive with those of the
             absent class members, or at least with those class members who signed declarations in
24           support of plaintiff's motion. On the other hand, plaintiff's claims are not co-extensive
             with those of the class members who submitted declarations in support of [the
25           defendant's] opposition to the present motion.

26   *Id.* at 637. Likewise, in *Garcia*, the Court noted the conflicting evidence of the parties defeated a

27   ———————————————————

28       [19] Moreover, the conflicting evidence demonstrates the Court would be required to conduct individual inquiries to
determine which workers in the same crew were required to perform off-the-clock work without compensation, while
others working for the same foreman were not, and why.

1   determination that the plaintiff had satisfied the typicality requirement of Rule 23(a).  *Garcia*, 2008

2   WL 2073979, at *13.  The Court observed the proposed class representatives' claims were "typical of

3   **some** of the proposed class members but *a*typical of other of the proposed class members."  *Id.*

4   (emphasis in original).

5       Although Plaintiff and putative class members were employed by Defendant and were subject

6   to the same policies and procedures, declarants provide differing accounts of whether off-the-clock tray

7   washing was required at Castlerock, and Plaintiff does not appear "to have the same or similar injury"

8   as his peers.  Therefore, Plaintiff is unable to demonstrate typicality of claims with members of the

9   proposed class.

10              4.      Adequacy of Representation

11      Because Plaintiff has not satisfied the prerequisites of commonality and typicality under Rule

12  23(a), he would not be a proper representative of the class.  *See Stearns v. Ticketmaster Corp.*, 655

13  F.3d 1013, 1027 (9th Cir. 2011) (affirming a finding that the named plaintiffs "are not proper class

14  representatives" because their claims were "not typical of the class members").

15      Consequently, because Plaintiff failed to demonstrate the requirements of Rule 23(a) are

16  satisfied by this class, the Court recommends certification of the "The Trays Class" be **DENIED**.

17      **B.    The Tools Class**

18      Plaintiff asserts fieldworkers "were not reimbursed costs incurred" for acquiring necessary

19  equipment.  (Doc. 148 at 11.)  Under California law, "An employer shall indemnify his or her employee

20  for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge

21  of his or her duties."  *Id.* (quoting Cal. Labor Code § 2802(a)).  Therefore, Plaintiff seeks to certify a

22  class of "[a]ll employees of Golden Grain Farm Labor Contractor who worked at Castlerock Vineyards

23  from 11/9/2001 to August 2004 and were forced to purchase, without reimbursement, tools and

24  necessary equipment to perform their jobs."  (Doc. 146 at 2.)

25              1.      Standing

26      A named plaintiff must have the requisite "personal stake in the outcome" and be a member of

27  the class which he or she seeks to represent at the time the class is certified.  *O'Shea v. Littleton*, 414

28  U.S. 488, 494 (1974). "[A] class representative must be a part of the class and possess the same interest

and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156.  Therefore, "[a] named plaintiff cannot represent a class alleging ... claims that the named plaintiff does not have standing to raise."  *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) (citing *O'Shea*, 414 U.S. at 493-94).

Here, Plaintiff testified that he was provided pans and scissors when he began to work at Castlerock.  (Soto Depo. 41:23- 42:4.)  Plaintiff described the scissors as "kind of junky" and "very used."  (*Id.*, 42:18-43:2.)  However, he used the scissors that were provided, as did his wife and niece.  (*Id.* at 46:6- 48:20.)  One day, Plaintiff left his scissors at home, which he reported to his foreperson "Marta" and in response "[s]he said whatever."[20]  (*Id.* at 45:11-16, 46:14- 47:1.)  Plaintiff testified he purchased new scissors from his foreperson for $10 the day he left the company-provided scissors at home, and that he kept these scissors after he stopped working at Castlerock.  (*Id.* at 48:1-10.)

Consequently, Plaintiff does not claim the company failed to provide the tools necessary for his work.  To the contrary, Plaintiff admits tools were provided on his first day at work.  When he left the company-provided equipment at home, it appears he *chose* to purchase a new pair of scissors rather than return to his home and retrieve those he had forgotten.  There is no indication Plaintiff was "forced" to purchase new scissors.  Therefore, it does not appear Plaintiff has standing to pursue a claim for a violation of Cal. Labor Code § 2802(a).

### 2.    Rule 23(a) Requirements

Even if the Court were to conclude Plaintiff has standing to prosecute this claim on behalf of a class, Plaintiff has not demonstrated the other requirements of Rule 23(a) are satisfied.

As with the Trays Class, Plaintiff asserts the numerosity requirement is met because "in a single but representative harvest season, Castlerock had more than 800 Golden Grain workers harvesting grapes."  (Doc. 148 at 15-16.)  However, Plaintiff does not identify evidence regarding the number of workers who required tools as part of their harvesting work, or how many were required to purchase these tools.

Notably, of the putative class member declarations made under penalty of perjury, only

---

[20] The true and correct name of the individual Plaintiff identified as "Marta" is Martha Ayon, who admits she was Plaintiff's foreperson while he was employed by Golden Grain to work at Castlerock.  (*See* Doc. 151-1, Ayon Decl. ¶5.)

1    Plaintiff and Guadalupe Verdugo Borbon unequivocally assert they were required to purchase scissors

2    without reimbursement.  (Doc. 147-1, Soto Decl. ¶ 5; Doc. 147-9, Borbon Decl. ¶ 13.) Salvador Garcia

3    and Maria Martinez each report: "It was common practice that during my employment that the

4    employees, including myself, were required to purchase and/or maintain our tools and equipment

5    without being reimbursed for these."  (Doc. 147-46, S. Garcia Decl. ¶ 7; Doc. 147-39, Martinez Decl.

6    ¶7.)  However, this ambiguous statement fails to establish whether the employees were required to

7    *purchase* tools without reimbursement.  The statement may mean they were required to *maintain* the

8    tools and equipment without reimbursement rather than being required to purchase tools.  Moreover,

9    the vagueness of the statement could lend itself to mean that they were not paid for washing—which is

10   maintenance—the trays.

11        Likewise, Ms. Martinez and Mr. Garcia do not explain for whom it was "common practice" to

12   "purchase and or/maintain" tools such that the Court can infer they are referring to a sufficiently large

13   group of employees.  Consequently, Plaintiff failed to meet his burden to demonstrate the numerosity

14   requirement is satisfied.  *See Wal-mart Stores*, 131 S. Ct. at 2551 (a plaintiff "must be prepared to

15   prove that there are *in fact* sufficiently numerous parties"); *Schwartz*, 183 F.R.D. at 681 (the plaintiff

16   as a burden to "show some evidence of or reasonably estimate the number of class members").  Given

17   that the fieldworkers do not allege the necessary tools were not provided for their work at Castlerock,

18   the Court cannot presume, as Plaintiff would have it, the number of class members is sufficiently

19   numerous to meet the Rule 23 requirements simply based upon the total number of Golden Grain

20   employees working at Castlerock.  Accordingly, Plaintiff has not carried his burden to demonstrate the

21   class is sufficiently numerous to meet the requirements of Rule 23(a).

22        Further, Plaintiff is the only individual who asserts he had to purchase a replacement tool.  Of

23   the putative class member declarations provided by Plaintiff, 14 of the individuals do not endorse

24   Plaintiff's claim that the necessary tools were not provided, and report only as to other alleged wage-

25   and-hour violations.  (*See, e.g.*, Doc. 147-28; Doc. 147-30; Doc. 147-32; Doc. 147-34.)  The Golden

26   Grain foremen report that the company provided "all the tools and equipment that [the] crew needed to

27   do its work, such as clippers, trays, tables, scales, and carts"  (Doc. 151-1, Ayon Decl. ¶ 4; Doc. 151-2,

28   Morales Decl. ¶4; Doc. 151-3, Gallardo Decl. ¶ 4; Doc. 151-4, Lemus Decl. ¶ 4.)  According to Ms.

1   Ayon, asking a worker "to purchase clippers would not have been consistent with [her] practice or with

2   the policies of Golden Grain." (Ayon Decl. ¶ 5.)  Similarly, Mr. Morales reported the foremen "could

3   not and did not charge workers for lost or broken tools or equipment." (Morales Decl. ¶ 4.)  Each of

4   Defendant's declarants who worked for Golden Grain report that they "have never been required to

5   purchase tools or equipment while working on a vineyard operated by Castlerock." (*See, e.g.*, Doc.

6   151-12, Jaime Decl. ¶ 9; Doc. 151-17, Marin Decl. ¶ 9; Doc. 151- 22, Pantoja Decl. ¶ 9.)

7          Finally, Mr. Lutz testified that Castlerock's policy was to require Golden Grain to provide all

8   necessary tools for employees. (Doc. 147-6 at 26)  The assertion by Plaintiff that Lutz testified "he does

9   not know if tools or equipment were provided to fieldworkers" is a bald mischaracterization of Lutz's

10  testimony. (Doc. 148 at 21.)  Instead, this testimony referred to the contract between Castlerock and

11  Golden Grain—not the tools to be provided to the workers—and which indicated Castlerock would

12  provide to Golden Grain "certain tools and equipment."[21]  (Doc. 147-6 at 8.)  In no portion of the

13  deposition does Mr. Lutz state that he was uncertain whether tools were provided to employees.  To the

14  contrary, he testified the Castlerock/Golden Grain contract required Golden Grain to provide tools and

15  he "believed" Castlerock's quality control people ensured this occurred.  (Lutz Depo at 176:23-25.)

16         Given the conflicting evidence, the Court cannot find the claims of Plaintiff satisfy the

17  commonality or typicality requirements of Rule 23.  *See Gonzalez*, 281 F.R.D. at 263-64; *Garcia,* 359

18  Fed. App'x at 726; *Joe's Crab Shack*, 271 F.R.D. at 637.  Because Plaintiff has not satisfied the

19  prerequisites of commonality and typicality, he would not be a proper representative of the class. *See*

20  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1027 (9th Cir. 2011) (affirming a finding that the named

21  plaintiffs "are not proper class representatives" because their claims were "not typical of the class

22  members").  Therefore, the Court recommends certification of the Tools Class be **DENIED**.

23         **C.   Plaintiff's Requests to Amend**

24         In the event that the Court determined Plaintiff failed to demonstrate the commonality and

25  typicality requirements were satisfied due to the conflicting evidence, Plaintiff requested in his reply

26

27         [21] In fact, later questioning by Plaintiff's counsel reaffirms that Lutz was referring to tools being provided by
    Castlerock to Golden Grain when counsel clarifies, "You mentioned earlier that you don't know -- you didn't know what
28  tools were provided pursuant to this contract to Golden Grain."  (Lutz Depo at p. 168:9-11.)

1    brief that he be permitted to (1) amend the class definition to narrow the class definitions to exclude

2    the crews of Alejandro Morales, Alfredo Gallardo and Salvador Lemus and include only the crews of

3    Martha Ayon, Octaviano Quintino, Benito Perez, Raul Quintino, and Guadalupe Garza; and (2) add

4    class representatives who are "capable of meeting [the] Rule 23 typicality requirement" to cover these

5    crews.  (Doc. 155 at 12, 14.)

6                              1.       Amendment of the class definition

7              The Court may cure the defects of a proposed class definition where the class is overbroad.

8    *See, e.g., Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482-83 (N.D. Cal. 2011); *see also Powers v.*

9    *Hamilton County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have

10   broad discretion to modify class definitions"); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th

11   Cir. 2004) ("district courts are permitted to limit or modify class definitions to provide the necessary

12   precision").  In addition, the Court may consider proposals to change a class definition first raised in a

13   plaintiff's reply brief on a motion for class certification. *See, e.g., Thomas & Thomas Rodmakers, Inc.*

14   *v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 161 (C.D. Cal. 2002) (in response to the

15   defendant's objections that individual factual assessments precluded class certification, to "alleviate[]

16   these concerns," the plaintiffs proposed an amended definition in their reply brief, which was

17   considered by the court in evaluating the Rule 23 requirements); *Conant v. McCaffrey*, 172 F.R.D.

18   681, 683 (N.D. Cal. 1997) (finding the plaintiffs "substantially alleviated" the problem resulting from

19   an overly broad class definition by "revising the class definition in their reply brief").

20            Significantly, however, Plaintiff offers no explanation of how the narrowing the class

21   definitions to include only the crews of Martha Ayon, Octaviano Quintino, Benito Perez, Raul

22   Quintino, and Guadalupe Garza would satisfy the requirements of Rule 23.  To so define the classes,

23   the Court would have to find that Golden Grain did not have a uniform policy of requiring off-the-clock

24   work or required workers to purchase tools without reimbursement, yet these foremen had policies or

25   practices that were not adopted by all Golden Grain foremen.  There is no evidence to support such a

26   finding.  Furthermore, to so narrow the classes at this stage in the litigation would impede Defendant's

27   due process rights, because Defendant has conducted class discovery to refute Plaintiff's claims that

28   *Castlerock* has unlawful practices and policies, not that *specific foremen* for one of its farm labor

                                                          33

1    contractors had unlawful practices and policies.

2         Moreover, Plaintiff makes no showing that there are prospective plaintiffs able and willing to

3    take on the role of a class representative.  In any event, even assuming additional class representatives

4    should or could be added to the lawsuit at this very late date and assuming the class definition should

5    be limited to these five foremen, Plaintiff fails to demonstrate there are sufficiently numerous putative

6    class members such to satisfy the Rule 23(a)(1).

7                2.     Appointment of new class representatives

8         Plaintiff contends the Court has the power to permit the substitution of a proper plaintiff and

9    "should play the role as the guardian of the interests of the putative class."  (Doc. 155 at 14, citing

10    *Shelton v. Pargo*, 582 F.2d 1298, 1306 n. 20 (4th Cir. 1978)).  Significantly, however, as noted above,

11    this presupposes, without any showing whatsoever—Plaintiff has demonstrated the numerosity and

12    commonality requirements and the class fails only for a reason that can be corrected by adding a

13    plaintiff to the matter. *See Int'l Woodworkers of America, AFL-CIO v. Chesapeake Bay Plywood Corp.*,

14    659 F.2d 1259, 1270 (4th Cir. 1981) (finding the district court erred in denying class certification based

15    upon a determination that the proposed class representative's claim was time-barred where there was

16    evidence that the defendant had "a uniform policy of employment discrimination," and remanding the

17    matter for the court to "permit a proper plaintiff or plaintiffs who can claim discrimination…to present

18    themselves to the court to pursue the claim as a class representative").  Here, as discussed above,

19    Plaintiff has not demonstrated the Golden Grain foremen working at Castlerock properties had uniform

20    policies requiring off-the-clock work of requiring individuals to purchase necessary tools without

21    reimbursement and has not demonstrated numerosity.

22         Furthermore, Plaintiff has been aware of Defendant's argument that he was not a proper class

23    representative for several years.  In July 2011, Plaintiff filed a motion to amend the complaint pursuant

24    to Fed. R. Civ. P. 15(a) to add Javier Garcia as a class representative.  (Docs. 54, 64.)  The Court noted

25    the most critical factor in determining whether to grant leave to amend is prejudice to the opposing

26    party.  (Doc. 71 at 8, citing *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.

27    2003)).  Even then, the Court determined "allowing the naming of a new class representative would

28    unduly prejudice Defendant, because Defendant has been preparing arguments and defenses based upon

34

the identity of the class representatives <u>who have been named since 2009</u>." (*Id.* at 10, emphasis added.) To allow amendment for Plaintiff to name new class representatives—who are not identified with this request—would most certainly prejudice Defendant, who would be required to conduct even more discovery to determine whether unique defenses may be asserted against the class representatives to defeat a finding of typicality under Rule 23. *See, e.g., Rainy Lake One Stop v. Marigold Foods*, 195 F.3d 430, 438 (8th Cir. 1999) (granting a motion to add class representatives would require further class discovery and delay, which was "precisely the sort of prejudice that justifies denial of a motion to amend under Rule 15(a)"); *In re Flash Memory Antitrust Litig.*, 2010 U.S. Dist. LEXIS 59491 (N.D. Cal. June 9, 2010) (finding undue prejudice where, years into a case, adding new class representatives "would require Defendants to conduct new and/or additional discovery that would not otherwise have been required had Plaintiffs joined the appropriate representatives in the first instance").

Given the conflicting evidence presented by the parties that defeats a finding of uniform unlawful practices or polices, and the number of years this litigation has been pending, Plaintiff's requests to narrow the class definitions and identify new class representatives are **DENIED**.

## VII.    FINDINGS AND RECOMMENDATIONS

As set forth above, Plaintiff failed to demonstrate class certification is appropriate for the proposed classes. First, Plaintiff failed to establish the numerosity requirement was satisfied for either class. Even if the Court assumed the classes were sufficiently numerous, the conflicting evidence provided by Plaintiff and Defendant defeats a finding of commonality or typicality of the claims. Therefore, the Court declines to discuss whether these classes satisfy Rule 23(b). *See Amchem Prods.*, 521 U.S. at 614 (explaining a court only reaches the requirements of Rule 23(b) when a party seeking class certification demonstrates the proposed classes satisfy the prerequisites of Rule 23(a)).

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Plaintiff's motion for class certification be **DENIED**.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days of the date of service of these findings and recommendations, any party may file and serve written

objections with the Court.  A document containing objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the Objections shall be filed and served within fourteen days of the date of service of the Objections.  The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

   Dated:   __**December 20, 2013**__            ___**/s/ Jennifer L. Thurston**___
                                            UNITED STATES MAGISTRATE JUDGE