UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVESTRE SOTO, on behalf of himself and all other similarly situated individuals,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>CASTLEROCK FARMING AND TRANSPORT, INC.,<br><br>　　　　　Defendant. | Case No.: 1:09-cv-00701 - AWI - JLT<br><br>ORDER DENYING PLAINTIFF'S MOTION TO STRIKE CLASS MEMBER DECLARATIONS SUBMITTED IN SUPPORT OF DEFENDANT'S OPPOSITION TO CLASS CERTIFICATION<br><br>(Doc. 167) |

Silvestre Soto ("Plaintiff") seeks to strike the class member declarations filed by Castlerock Farming and Transport, Inc. ("Castlerock" or "Defendant") with its opposition to class certification. (Doc. 167). Plaintiff's motion was filed the day before the hearing on Plaintiff's motion for class certification, and the Court construes Plaintiff's arguments to be evidentiary objections. For the following reasons, Plaintiff's motion to strike is **DENIED**.

I.   **Factual and Procedural History**

Plaintiff filed a motion for class certification now pending on September 30, 2013. (Doc. 146.) Plaintiff submitted 43 declarations of putative class members in support of class certification. (Doc. 147, Exh. 3-48.) Defendant filed its opposition to certification on October 28, 2013 (Doc. 150), as well as 34 declarations of its employees in support of its opposition. (Doc. 151, Exh. 1-34.) On December 12, 2013, Plaintiff moved to strike Defendant's declarations from fieldworkers, arguing Defendant's "communications with its declarants were misleading and deceptive." (Doc. 167 at 5.)

1

## II.   Timeliness of Plaintiff's motion

Plaintiff filed his motion to strike Defendant's declarations on the eve of the class certification hearing. Although the declarations were filed by Defendant with its opposition on October 28, 2013, Plaintiff did not raise evidentiary objections to the declarations until less than 24 hours before the hearing on his motion for class certification, by filing this motion. Significantly, Plaintiff seeks not only to strike the declarations, but also "requests that the Court refrain from issuing its findings and recommendations on Plaintiff's Motion for Class Certification until it can consider this present motion." (Doc. 167 at 2.)

Given that Plaintiff's motion is no more than further evidentiary objections and arguments in reply to Defendant's opposition, couched as a separate "motion," the arguments presented therein are untimely. Pursuant to the Court's briefing schedule, Plaintiff's reply was to be filed more than two weeks after Defendant's opposition was filed, on November 18, 2013. (Doc. 145 at 2.) Plaintiff filed a reply in compliance with the Court's order. (Doc. 155.) He did not, however, raise any objections to Defendant's declarants with his reply, and delayed in doing so until Defendant had no opportunity to respond except by oral argument at the hearing.

Significantly, pursuant to Local Rule 230, when a party seeks to make a related motion to the general subject matter of the original motion, the related motion "shall be filed in the manner and on the date prescribed for the filing of opposition." LR 230(e). Although here the Court set a specific briefing schedule related to Plaintiff's motion for class certification, in general, any opposition "shall be filed and severed not less than fourteen (14) days preceding the noticed… hearing date" LR 230(c). Consequently, Plaintiff should have filed this related motion no later than December 4, 2013—which was more than 30 days after Defendant filed the declarations now in question. Furthermore, any requests for a continuance of a motion "upon stipulation or otherwise, shall be made… at least seven (7) days before the scheduled hearing date." LR 230(f). Consequently, Plaintiff's request for the Court to delay its ruling on the motion for class certification and to strike the declarations is **DENIED** as untimely.

///
///

### III.     Admissibility of Declarations

Even if Plaintiff's motion was not untimely, the Court would not grant the motion. In conjunction with a motion for class certification, the Court may consider material evidence submitted by the parties to determine Rule 23 requirements are satisfied. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Accordingly, declarations may be used to support or oppose a motion where presented in writing, subscribed as true under penalty of perjury, and dated. 28 U.S.C. § 1746.

Plaintiff contends the declarations filed by Defendant with its opposition to class certification were gathered through a "misleading and deceptive" process because Castlerock (1) "failed to disclose the details of Soto's lawsuit to its class member declarants" and (2) "failed to disclose to its class member declarants that Castlerock's interests are adverse to those of the putative class." (Doc. 167 at 5, 8) (emphasis omitted). Therefore, Plaintiff argues Defendant's declarations must be stricken because the putative class members were not informed of the details litigation. (Doc. 167 at 5) (citing, *e.g., Longcrier v. HL-A Co., Inc.* 595 F.Supp.2d 1218, 1230 (S.D. Ala. 2008); *Mevorah v. Wells Fargo Home Mortg.*, 2005 U.S. Dist. LEXIS 28615, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005)).

In *Mevorah*, the court examined pre-certification communications by the defendant to potential class members. *Id.*, 2005 U.S. Dist. LEXIS 28615, at *10. The defendant, through counsel, contacted employees via telephone and informed them phone call was related to the action, but mischaracterized action violated California Rule of Professional Conduct 3-600 and observed, "The opportunity for mischief is compounded by the relationship between the employer and the employee and the coerciveness an employee may feel." *Id.* at *14-15, 17.

Likewise, when the district court struck declarations of putative class members in *Longcrier*, counsel for the defendant "engaged in conduct that would reasonably be expected to mislead and deceive the prospective plaintiffs concerning the nature, purpose and implications of their participation in the declaration process." *Longcrier*, 595 F.Supp.2d at 1228. Specifically, declarants were called into meetings with counsel, who informed the declarants that the company "was conducting a survey," and "covertly concealed" the fact that the lawsuit was pending. *Id.* at 1227-28. The court observed:

> [T]he court file establishes a clear record of abusive communication by [the defendant] to prospective opt-in plaintiffs. Knowing that this lawsuit was pending and that it was styled as a § 216(b) opt-in proceeding, Defendant called each of its hourly workers into

>    a one-on-one meeting during work hours with its attorney(s), creating an inherently coercive and intimidating environment for interviews and execution of paperwork concerning pay practices. Defendant's attorneys asked general questions about pay practices and placed a largely form document in front of each employee to be signed. **While that inherently coercive setting is not itself grounds for relief, Defendant's misleading statements to these potential plaintiffs about the reasons for the interview and the declaration process, and their suppression of the truth, were obviously designed to lull prospective plaintiffs into a false sense of security and to effectuate their complete cooperation with minimal resistance**. Such manipulation of unrepresented parties to secure [d]eclarations that [the defendant] now uses for the purpose of preventing the very people it mislead from being able to litigate their FLSA rights herein is improper.

*Id.* at 1229 (emphasis added). Here, Plaintiff seems to assert that *Longcrier* is analogous because "[a]t best… Defendant purposely neglected to refer to grape trays or *bandejas* when gathering class member declaration in order to obcure (sic) the grape-tray issue" and, at worst, Castlerock "intentionally mislead its declarants" through not specifically mentioning grape trays. (Doc. 167 at 7.) Notably, however, Defendant used the same term in the declaration—"equipment"—that Plaintiff used to state his claim in his complaint. (Doc. 1 at 13) Though Plaintiff also refers to "bandejas (trays)" in the complaint (Doc. 1 at 12), what this piece of equipment is called varies depending on who is describing it. For example, Plaintiff referred to the trays as "pans" at his deposition (Soto Depo at 42, 57, 73, 110) but called them "trays" in his declaration (Doc. 147-1) and Defendant's declarants refer to them as "tubs."

      There is no showing that calling the trays "equipment" is incorrect even though a more specific term could have been used and there is no showing that had Defendant used the words "pans," "trays" or "tubs," that a different statement would have been given by Defendant's declarants. Further, the two new declarations[1] proffered by Plaintiff fail to assert the declarants didn't understand when the term "equipment" was used in the declarations, it included trays; indeed, they offer no explanation whatsoever for their current claims which are directly contrary to their earlier sworn statements that they never worked after the foremen called an end to work and "have never taken equipment home to wash, clean or repair . . ." In the face of the fact that the declarations define equipment to include,

---

[1] Notably, Plaintiff does not report the number of declarants he contacted who refused to refute the statements made in the declarations, if any. The Court presumes, however, if Plaintiff discovered any other of the declarants who disavowed their declaration proffered by Defendant, he would have brought this fact to the Court's attention.

"pruning shears and scissors, umbrellas, tubs, bags, pampers, scales, and anything else required for harvest or other vineyard work," there is little uncertainty as to the meaning attributed to this word in Defendant's declarations.

In addition, Plaintiff asserts the declarations are misleading regarding the tools claim because the workers were questioned "about current, non-Golden Grain practices at Castlerock." (Doc. 167 at 7.) However, each declarant was also asked about their entire experience while working on Castlerock properties as documented by the declarants' assertions, "I have never been required to purchase tools or equipment while working on a vineyard operated by Castlerock." Thus, exactly why Plaintiff thinks asking about current practices is problematic, is not explained.

Finally, Plaintiff argues the declarations should be stricken as in *Longcrier* because Defendant's declarants "do not confirm that Castlerock representatives informed them that Castlerock's interests as the employer of putative class members is or could be potentially adverse to their own interests as fieldworkers." (Doc. 167 at 8.) Significantly, however, *Longcrier* does not stand for the proposition that a party is required to provide notice of a lawsuit prior to communicating with potential class members—nor do the other cases cited by Plaintiff. Rather, the court in *Longcrier* explained pre-certification contact by the defense to obtain declarations is "entirely permissible and appropriate." *Longcrier*, 595 F.Supp.2d at 1229. Plaintiff has not cited any authority supporting his assertion that a defendant is required to explain the possible consequences of signing a declaration, or the purpose of the declaration. The authorities referenced by Plaintiff prohibit *misleading* declarants about the litigation or the purpose of the meetings to secure their cooperation.

Here, it does not appear the declarants were *misled* by representations of Defendant, which informed each declarant there was a lawsuit pending against Castlerock. Indeed, Ms. Saldana and Ms. Martinez assert in their newly-filed declaration, "My understanding is that said declaration was used by Castlerock to oppose the collective claims that Soto is making." (Doc. 168-2 at 3) Thus, it is apparent both declarants were fully aware the declarations would be used in this litigation to address *all* of Soto's claims. This is consistent with their earlier-filed declarations proffered by Defendant which affirmed: "I understand that the only reason that Castlerock has asked to talk to me is to get information for a lawsuit that has been filed against Castlerock." (*See, e.g.,* Doc. 151-13 at 4.) Consequently, it

does not appear Defendant engaged in a "misleading" communications with the putative class members, and neither *Mevorah* nor *Longcrier* are analogous to the facts currently before the Court.

Finally, although Plaintiff cites *Belt v. Emcare Inc.*, 299 F.Supp.2d 664, 667 (E.D. Tex. 2003) for the proposition that "there is a 'heightened potential for coercion' where absent class members and the defendant are in an employer-employee relationship" (Doc. 167 at 5), Plaintiff does not contend— nor is there any evidence—that Defendant attempted to frighten potential class members or suggest the action could affect the employment of declarants.  In *Belt*, the court examined communications made by the defendant in a representative action where the defendant unilaterally mailed a letter to absent class members before the court-approved class notice was sent.  *Belt*, 299 F.Supp.2d at 666.  The letter "misrepresented many issues in the action," such equating the "wage claim with a malpractice suit" and "attempt[ed] to frighten class members from joining the action."  *Id.* at 666, 668.  Further, the court found the letter was coercive because the defendant "exploited [its employment] relationship by preying on fears and concerns . . . and by suggesting that this action could affect the potential class members' employment."  *Id.* at 669.  Here, as discussed, Defendant did not misrepresent issues in the action.  Each declarant reported the declaration was given voluntarily and reported: "I have not been threatened in any way or provided with any benefit for discussing the lawsuit with Castlerock."  (*See, e.g.,* Doc. 151-13 at 4.)  Moreover, neither Ms. Saldana nor Ms. Martinez claim they felt coerced into given the declaration for Defendant's use.  (Doc. 168-1; Doc 168-2) Therefore, it does not appear declarations were obtained through a coercive or misleading procedure, and *Belt* is not instructive.

## IV.     Conclusion and Order

As discussed above, Plaintiff's motion to strike Defendant's declarations related to the motion for class certification was untimely.  However, even if the motion was not denied for this reason alone, Plaintiff has not demonstrated the procedure Defendant used to gather declarations was misleading or coercive.  Although Plaintiff disputes the content of the declarations, this goes to the weight to be afforded these declarations, rather than their admissibility.  Moreover, at the class certification stage, the Court is permitted to consider inadmissible evidence.  *See Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (describing a court's determination of class certification as based on "tentative findings, made in the

absence of established safeguards" and describing a class certification as "of necessity . . . not accompanied by the traditional rules and procedures applicable to civil trials").

Based upon the foregoing, **IT IS HEREBY ORDERED**: Plaintiff's motion to strike class member declarations submitted in support of Defendant's opposition to class certification (Doc. 167) is **DENIED**.

IT IS SO ORDERED.

Dated:   **December 20, 2013**              **/s/ Jennifer L. Thurston**
                                                                             UNITED STATES MAGISTRATE JUDGE